GERSON ROSENSTOCK and MEYER STEIN *vs.* WILLIAM
ORTWINE.

*Effect of a Conceded prayer—Advance Mortgage—Assignment
of Contract—Extension of time—Distinction drawn between
qualifying and conflicting prayers—Liability of assignee of
a contract for Collateral Obligations of the assignor.*

On the 6th of August, 1872, R. and S. made a lease to C. of land in Balti-
more County, for the term of 99 years renewable forever.  On the same day
C. mortgaged the leasehold interest to the lessors to secure the repayment to
them of a sum of money, agreed to be advanced to him by them, in
specified instalments, upon certain dwelling houses which C. agreed to
erect upon said lots.   By the terms of the loan the money so to be
advanced, was to be *"expended in the purchase of materials for and defraying
the expenses of erecting said houses, and for no other purpose."*   Among other
covenants in the mortgage C. covenanted, "to begin work forthwith and to
complete the said houses, together with all necessary out-buildings, fencing
and grading of the yards, and to have said houses ready for occupation of
tenants in six months from the date hereof," &c.   On the 10th September,
1872, C. delivered to O. the following order: "Messrs. R. and S.   Will
please pay to the order of O. six thousand dollars, in payment for bricks to
be furnished by him in erecting the houses to be built on the lots of ground
heretofore leased by the said R. and S. to C., out of the last payments that
shall be due the said C. by the said R. and S., in accordance with the terms
of the mortgage from C. to R and S. upon said lots of ground.   Signed,
C.   Baltimore City, September 10th, 1872."   R. and S. wrote their accept-
ance upon this order on the day of its date, and four several payments by
them were credited by endorsements thereon.   The bricks were delivered as
agreed upon by O., and C. commenced the buildings, but stopped work
before they were entirely completed.   In an action brought by O. against
R. and S. to recover the balance due him upon said acceptance, O. testified
that about the month of June, 1873, after C. had stopped work, one of the
defendants said to him, "O. why don't you go to work and get those houses
finished, I want to get the matter settled."   Whereupon he went on to
finish the houses, and did all that was required by the contract, as he

Rosenstock, *et al. vs.* Ortwine.

thought was intended. The defendants' first prayer which was conceded, affirmed that the order and the acceptance thereof by the defendants were conditional only, and the right of the plaintiff to recover depended precisely upon the same conditions, which the mortgage required to be performed by C. himself before he would become entitled to the money in question. HELD :

1st. That this concession rendered the construction of the contract between the mortgagor and mortgagees a necessary preliminary to the decision of the case, if not the vital question.

2nd. That whether right or wrong the parties had agreed that this was the law of the case, which agreement *pro hac vice*, was alike binding on them and the Courts.

3rd. That the order and acceptance of it constituted an assignment by consent of mortgagor and mortgagees, or drawer and drawees, of so much of the fund on which it was drawn to be paid on the performance of the conditions referred to—the terms relating to that subject; which were as to the mode and time of erecting the buildings.

4th. That the extension of the time by the defendants as given in evidence by the plaintiff, substituted the latter in the place of C., and entitled him to the benefit of the contract, as if the terms of the contract as to time originally had been complied with.

5th. That the fund dedicated by the contract for the erection of the buildings, could not, in the hands of an assignee for valuable consideration, be encumbered with the collateral obligations of the assignor.

5th. That the plaintiff's obligation under the accepted order, required only the completion of the buildings "in accordance with the terms of the mortgage," by which the whole sum of money to be advanced, was to be expended in the purchase of materials for and defraying the expenses of erecting said houses, and for no other purpose.

6th. That the time for completing the work being waived, and the other prerequisites complied with, the plaintiff became entitled to his money without deduction or abatement for ground rent, interest, drainage, or other liabilities of his assignor for breach of other covenants in the mortgage.

APPEAL from the Superior Court of Baltimore City.

This was an action brought by the appellee to recover from the appellants money claimed to be due him under their acceptance, or an order drawn upon them in his favor.

The case is stated in the opinion of the Court.

*First Exception.*—At the trial the plaintiff offered the two following prayers :

1. If the jury shall find from the evidence, that the order mentioned in the evidence as given by D. W. Caskey on the defendants, and accepted by them on 10th of September, 1872, was so given and accepted, and that the plaintiff furnished the bricks referred to in said order to Caskey, and that afterwards payments were made on said order by defendants, in the amount and at the times shown by the receipts on the back of said order, and shall further find that the houses mentioned in the evidence were built and finished in accordance with the plans and drawings agreed upon between said Caskey and the defendants, and shall further find that the said Caskey commenced the building of said houses, but stopped work on the same before they were . entirely completed, and that afterwards Meyer Stein, one of the defendants, said to the plaintiff:—"Ortwine, why don't you go to work and get the houses finished: I want to get the matter settled ;" and that thereupon the plaintiff proceeded to finish and did finish the said houses in a reasonable time thereafter, then the plaintiff is entitled to recover the sum of $4000, with interest, in the discretion of the jury, from the time of the said completion.

2. That the grading of the yards required to be done under the covenant contained in the said mortgage, was only the grading necessary at the time of the execution of the said contract, and not such grading as might be rendered necessary by subsequent improvement in the neighborhood; and therefore that all evidence offered by the defendants in regard to the effect on the present grading of the lots in question by the future improvement of the adjoining property, or the future changes of the grades of streets, lanes or alleys, is inadmissible under the contract in this case, and must not be considered by the jury in making up their verdict.

· And the defendants offered the seven following prayers:

1. That the order of Caskey and acceptance thereof by the defendants, which has been given in evidence by the plaintiff, are conditional only, and the right of the plaintiff to demand the money mentioned in the order, or any part thereof, is made by the terms of the order to depend upon precisely the same conditions which the mortgage required to be performed by Caskey himself, before he would become entitled to the advance of the money now in question.

2. That by the terms of the mortgage the defendants were lenders of money, to be advanced only upon certain terms and at certain times in the mortgage set forth, and that Caskey himself had no right to demand, nor did he by his order as accepted entitle Ortwine to claim, the last advance for which the mortgage stipulated, unless the buildings mentioned in the mortgage should be finished in accordance with the plans and drawings therein referred to, and all the necessary out-buildings, fencing and grading of the yards completed, and the premises ready for occupation of tenants in six months from the date of the mortgage.

3. Although the jury may find that the time for the completion of the buildings and premises, as prescribed by the mortgage, was enlarged by the defendants, or that Caskey or Ortwine went on with the work upon the same after the time fixed in the mortgage, by the consent of the defendants, the plaintiff is not entitled to recover, unless the jury shall find that the said buildings were completed, with all the necessary out-buildings and fencings, and the necessary grading of the yards, before the sale of the premises under the mortgage.

4. Even if the jury shall find that the time for the completion of the buildings and premises, in the manner set forth in the mortgage, was extended by the defendants, or that Caskey or Ortwine went on with the work upon

said buildings and premises after said period, with the consent of the defendants, and that said buildings were in fact afterwards completed, and the yards graded by Caskey or Ortwine, as required by the mortgage, the defendants are nevertheless entitled to a credit upon the order in controversy, for all ground rent, interest and taxes in arrear and due to the defendants by Caskey, under the mortgage, at the time of such completion.

5. That by a proper construction of the terms of the mortgage, in view of the circumstances and situation of the property, as given in evidence, the character of the grading spoken of in the mortgage as "necessary," was to be determined not by the condition and necessities of the lots alone as they then stood, but by the relation of said lots to the surrounding property and streets, and the grading and improvement of the latter, which were reasonable and proper to be anticipated at the time when the mortgage was executed.

6. If the jury shall find that the drainage of the property in question as the yards thereof were graded and left by Caskey and the plaintiff, requires and involves the necessary flow and discharge of the surface water from the said property over an adjoining lot belonging to other parties, whence it had no escape except through a private sewer upon said lot, and thence upon another lot also belonging to private parties, then said grading was not the grading required by the mortgage, and the plaintiff cannot recover.

7. If the jury shall find that any amount whatever was required to be expended by the defendants for the completion of the premises and grading prescribed and required by the mortgage, after the said premises had been jointly abandoned as completed by Caskey and the plaintiff, the jury are bound to give the defendant credit for such amount, and also for the arrears of interest and ground rent, if any, which they shall find to have been due by Caskey under the

mortgage at the time when the premises were so abandoned; and if the said amounts shall exceed what, (if anything,) the jury under the instruction of the Court may find the plaintiff otherwise entitled to recover, the verdict must be for the defendants.

The Court (DOBBIN, J.,) granted the plaintiff's two prayers and the first three prayers of the defendants, (the first of which was also conceded by the plaintiff,) and refused the defendants' fourth, fifth, sixth, and seventh prayers. The defendants excepted.

The jury rendered a verdict in favor of the plaintiff, and judgment was entered accordingly. The defendants appealed.

The cause was argued before BARTOL, C. J., STEWART, BOWIE, BRENT, GRASON, MILLER and ALVEY, J.

*J. I. Cohen* and *S. T. Wallis,* for the appellants.

*Robert D. Morrison* and *Orville Horwitz,* for the appellee.

BOWIE, J., delivered the opinion of the Court.

The defendants' first prayer, which was conceded, affirms that the order and acceptance thereof by the defendants, on which the action is brought, are conditional only, and the right of the plaintiff to recover depends precisely upon the same conditions which the mortgage required to be performed by Caskey himself, before he would become entitled to the advance of the money now in question. This concession renders the construction of the contract, between the mortgagor and mortgagees, a necessary preliminary to the decision of the case, if not the vital question.

Whether right or wrong, the parties have agreed that this is the law of the case, which agreement *"pro hac vice"*

is alike binding on them and the Courts. *Baugher vs. Wilkins*, 16 *Md.*, 35, 46; *Phila., Wil. & Balt. R. R. Co. vs. Barker*, 29 *Md.*, 339.

The contract between the mortgagor and mortgagee, consists in the lease, and the mortgage, which were executed simultaneously, the latter referring to the former expressly.

These instruments show that the appellants, leased to David W. Caskey, on the sixth of August 872, in consideration of the payment of rents thereby reserved, sixteen vacant lots, laying on the North side of North Avenue in Baltimore County, near the limits of the City of Baltimore, for ninety-nine years renewable, the said Caskey paying on each of said lots, accounting from the first of January, 1873, semi-annually, certain ground rents, amounting in the aggregate per annum to $1673.50, but each particular lot to be liable only for its own rent or portion of the aggregate sum. Caskey covenanted to pay the rent semi-annually, and all taxes and assessments levied on said lots or rents.

The mortgage from Caskey to Rosenstock & Stein, of the same date, recited the execution of the lease, and whereas the said Caskey is about to erect and build upon said lots, sixteen good and substantial dwelling houses, and whereas the said Rosenstock & Stein, at the request and for the accommodation of said Caskey, have agreed to loan and advance to him the sum of thirty-two thousand dollars, *to be paid him during the progress of the building of said houses in the following manner, that is to say:* $250 on each house to be erected when the first floor of joist is reached and put down : (and so on each floor being laid to the fourth inclusive :) $250 on each house, when under roof: $250 on each when ready for plastering ; $250 on each when plastered, and two hundred and fifty dollars when finished ; *the whole of which sum of money shall be expended in the purchase of materials for and defraying*

*the expenses of erecting said houses, and for no other purpose.* Said houses to be erected in accordance with the plans and drawings approved by said Rosenstock & Stein, etc. It was understood and agreed by the parties thereto, that the interest shall be computed and paid on said sum of money to be advanced from the time of the advancements, and the whole $32,000, with interest thereon semi-annually from the first of January, 1873, (interest to that date to be adjusted,) is to be repaid to said Rosenstock & Stein on or before the 1st of July, 1874; and also, that said sum or such portion when advanced shall enure as a lien on all sixteen lots of ground, and the improvements thereon erected, etc., and it was a condition precedent to making said loan, that the repayment thereof with interest, as therein provided, and the performance of the conditions therein contained, and the agreements therein set forth, should be secured by a good and sufficient mortgage, wherefore those presents were executed. Caskey entered into the usual covenants to pay ground rent, interest and taxes.

In case of default being made in any of the conditions of the mortgage, the mortgagees were authorized to sell, etc.

And the said Caskey further covenanted "to begin work forthwith, and to complete the said houses, together with all necessary out-buildings, fencing and grading of the yards, and to have said houses ready for occupation of tenants in six months from the date hereof," etc.

D. W. Caskey, the mortgagor, on the 10th September, 1872, delivered to the appellee Ortwine, the following order or draft:

" *Messrs. Gerson Rosenstock and Meyer Stein;*

" Will please pay to the order of William Ortwine six thousand dollars, in payment for bricks to be furnished by

him in erecting the houses to be built on the lots of ground
heretofore leased by the said Rosenstock & Stein to David
W. Caskey, out of the last payments that shall be due
the said David W. Caskey by the said Rosenstock & Stein,
in accordance with the terms of the mortgage from David
W. Caskey to Rosenstock & Stein, upon said lots of
ground.

Signed,        D. W. Caskey."

"Baltimore City, Sept. 10th, 1872."

This draft was accepted on the day of its date. Four
several payments of $500 each, dated September 14th,
1872 : Feburary 11th, 1873 : April 2nd, 1873 ; and April
25th, 1873 ; by Messrs. Rosenstock & Stein, were credited
by endorsement.

The bricks were delivered as agreed upon by Ortwine ;
Caskey commenced the buildings, but stopped work before
they were entirely completed. It is in evidence in the
cause, that afterwards, about the month of June, 1873,
Meyer Stein, one of the defendants, said to the appellee
"Ortwine, why don't you go to work and get those houses
finished, I want to get the matter settled," whereupon the
witness testified, he went on to finish the houses, and did
all that was required by the contract, as he thinks was
intended.

The action is brought by the appellee, upon the theory,
that the limitation of time for the completion of the build-
ings, prescribed by the mortgage, having been waived by
the mortgagees, and the work done or completed by the
appellee, agreeably to the provisions of the mortgage in
other respects, he is entitled to recover the amount of the
order, less the credits endorsed, without further abatement
or deduction. That according to the true interpretation of
the agreement between the parties, as evidenced by the
premises of the mortgage, the whole of the sum of money
(thereby agreed to be advanced,) was to be expended in

the purchase of materials for, and defraying the expenses of erecting said houses, and for no other purpose whatsoever.

That the order of the defendants in favor of the appellee, is an assignment of a part of the fund appropriated to the erection of the buildings, not subject to any other conditions or covenants between the mortgagor and mortgagee.

The prayers submitted by the appellee, and granted by the Court, affirm these propositions. The appellants on the other hand, by the instructions offered by them, maintain that the appellee is subject to all the covenants of the mortgagor, is to fence and grade the yards; to pay the the ground rent, interest and taxes; to drain the premises, etc., and that the sums necessary for these purposes should be recouped or set off against the claim of the appellee.

The lease and mortgage taken together, show that as between the appellees and Caskey, the mortgage was not a mere security for money to be advanced on real estate, having a certain value sufficient to make the loan secure, but it was a device or arrangement between the owners of unimproved and unproductive lots on the one hand, and a contractor or builder on the other, by which the owners proposed to improve and enhance their lots, converting them into leasehold tenements, yielding rents, free from all encumbrances, and the contractor, by means of the skill, labor and materials expended in the improvements, expected to realize handsome profits, by either selling or subletting the premises. The lessors, determined to secure the priority of lien, as a condition precedent, stipulated that the repayment of the money should be secured by a good and sufficient mortgage.

How, under these circumstances, were the objects of the contracting parties to be carried out, without establishing by the contract between them, a fund, payable by instalments, to be exclusively appropriated to the erection of these houses, and for no other purpose. A material man

or a mechanic, seeing that his lien as such, was anticipated and prevented, or practically useless by the provisions of the mortgage, would have no recourse but to the solvency of the contractor, or the covenants of the mortgagee. Looking to the latter he finds a provision for payment of materials and work as the buildings advanced, with a pledge that the fund shall be applied to no other purpose. There were other covenants on the part of the mortgagor to be performed, but none which qualified this leading and prominent one, except that the buildings should be erected according to plan and in a given time.

Whilst the contract was scarce a month old, and things were "*in fieri*," the contractor Caskey drew the order given in evidence, in favor of the appellee Ortwine, for $6000 in payment for bricks to be furnished by him in erecting the houses, to be built on the lots of ground leased by Rosenstock and Stein to Caskey, out of the last payments that shall be due said Caskey by the said Rosenstock and Stein, in accordance with the terms of the mortgage, etc.

This order and the acceptance of it, constituted an assignment by consent of mortgagor and mortgagees, or drawer and drawees, of so much of the fund on which it was drawn, to be paid on the performance of the conditions referred to, the terms relating to that subject. These were as to the mode and time of erecting the buildings. The contractor failing as to time, the plaintiff according to his evidence, at the instance of the defendants, undertook to complete and did complete the buildings as required. Upon this hypothesis, the Court below granted the appellee's first prayer.

The extension of the time by the appellants, as given in evidence by the appellee, substituted the latter in the place of Caskey, and entitled him to the benefit of the contract, as if the terms of the contract as to time originally had been complied with. The fund dedicated by the

contract for the erection of the buildings, could not in the hands of an assignee for valuable consideration, be encumbered with the collateral obligations of the assignor.

It is earnestly argued by the appellants' counsel, that the appellee's first and the appellants' second prayers, which, (it is said,) are based substantially on the same hypothesis of facts, so far as the question of time is concerned, are inconsistent and irreconcileable.

That the former, gave the appellee, "a reasonable time to finish the houses," and the latter required him to finish them "before the sale under the mortgage." The prayers between which this supposed antagonism exists, are the appellee's first, and the appellants' third, not second, as stated in the appellants' brief.

The second was based exclusively on the mortgage, and referred to the rights and duties of the parties resulting form its provisions.

The third is based on the inference of an extension of time, deduced from the facts set out in the appellee's first prayer, and was clearly intended as a qualification of the law announced by that prayer.

This prayer recites "although the jury may find that the time for the completion of the buildings and premises as prescribed by the mortgage, was enlarged by the defendants, and that Caskey, or Ortwine, went on with the work upon the same, after the time fixed in the mortgage by the consent of the defendants, the plaintiff is not entitled to recover, unless the jury shall find that the said buildings were completed with all the necessary outbuildings and fences, and the necessary grading of the yards before the sale of the premises under the mortgage."

This recital refers to the appellee's first prayer, not by number, or other express designation, but by repeating the concluding, and conclusive fact of the hypothesis on which the appellee's prayer was founded, (putting a part for the whole) and submitting "although the jury may so find"

the plaintiff was not entitled to recover, unless the buildings, etc., were completed "before the sale."

The appellants' third prayer when interpreted is equivalent to saying : " Grant or admit all that is affirmed by the appellee in his first prayer, he is not entitled to recover, unless he completed the buildings not only within reasonable time, but before the sale." This is a case of qualifying, not contradictory prayers.

Where contradictory instructions are granted, confusion must follow, because it would be impossible for the jury to determine by which they should be guided, or the Court to decide by which they were governed, in rendering their verdict. Such was the case in *Adams vs. Capron, et al.,* 21 *Md.,* 206, and *Haney vs. Marshall,* 9 *Md.,* 215.

But no such consequence follows, where it is apparent upon the face of the prayers and the order of their succession, that the one was a qualification of the other.

The appellants' third prayer modified the appellee's first, not only in the matter of time, but in the description of work to be completed. It required the jury to find " that the said buildings were completed, with all the necessary out-buildings and fences, and the necessary grading of the yards, before the sale of the premises under the mortgage."

This could not have been designed, as a mere contradiction or denial of the proposition announced in the appellee's prayer, because that had been granted upon a different hypothesis of facts, as to the work to be completed, but adopting the appellee's theory of the extension of time by the defendants, the appellants superadded as a condition precedent to the right of recovery, that the necessary out-buildings, fencing and grading should also be completed.

The appellants' third prayer, in our judgment was an amendment of the propositions contained in the plaintiff's first and second, engrafted by reference to the evidence and conclusions embodied in them, qualifying and modify-

Rosenstock, *et al. vs.* Ortwine.

ing those conclusions in favor of the appellants, but not negativing them. The doctrine laid down in the appellants' third prayer, was broader than they were entitled to, but being granted them, they have no ground of appeal in that respect.

Having already intimated, that the plaintiffs' obligation under the accepted order, required only the completion of the buildings, "in accordance with the terms of the mortgage," by which, the whole sum of money to be advanced was to be expended in the purchase of materials for and defraying the expenses of erecting said houses, and for no other purpose whatever, we think the appellants' fourth, fifth, sixth and seventh prayers, were properly rejected.

Ortwine was, by operation of the order and its acceptance by the drawees, assignee of a fund dedicated to specific objects, to be accomplished within given time, according to certain approved plans.

The time being waived, and other pre-requisites complied with, he became entitled to his money without deduction or abatement.

To make him liable for ground rents, interest, drainage, or other liabilities of his assignor, for breach of other covenants in the mortgage, would be to divert the fund from the purposes to which it was pledged, and deprive the plaintiff of the benefit of his materials, labor and skill, and of the waiver of his assignor's default.

*Judgment affirmed.*

(Decided 8th March, 1877.)