# PEN MAR COMPANY, INCORPORATED, *v.* LOUIS S. ASHMAN.

*Trust Fund—Equitable Assignment—Priorities—Attachment of Fund—Building Loan—Payment in Instalments.*

Where a trustee was named by agreement to hold the proceeds of a mortgage loan, and to pay it out on the mortgagor's order in instalments as improvements on the mortgaged property progressed, and the mortgagor made assignments of definite parts of certain instalments, which assignments the trustee filed for the purpose of paying them as the instalments came due, *held* that the assignments were effective as against an attachment of the fund in the trustee's hands, issued after the trustee was notified of the assignments.                                   pp. 278-280

The effectiveness of the assignments as regards the amounts of the designated instalments was not affected by the fact that, by reason of the mortgagor's failure to complete the improvements, and their consequent completion by the trustee at the mortgagor's risk, as provided in the trust agreement, the instalments never became due and payable in accordance with the terms of the contract, the purpose of the assignments being to appropriate definite portions of the trust fund to the assignees, and the portions so designated being traceable and identifiable, even though diminished by the operation of conditions imposed by the agreement.                                   pp. 280-282

Prior notice to a debtor of a partial assignment of the claim by the creditor makes the assignment operative as an equitable assignment, good as against a subsequent attachment.     p. 279

Where an exception to the refusal to strike out testimony is incorporated in a single bill of exceptions with an exception to a ruling on the prayers, the action on the prayers is alone reviewable on appeal.                                   p. 283

In a garnishment proceeding, involving questions of priorities as between the garnishment and certain assignments, it was

error to grant instructions which ignored the fact that the assignments were not against a general fund, but were against the residue of two separate and distinct parts of that fund.      p. 283

*Decided Februray 9th, 1927.*

Appeal from the Baltimore City Court (SOLTER, J.).

Attachment by the Pen Mar Company, Incorporated, on a judgment against Emanuel J. Schlissler, laid in the hands of Louis S. Ashman, Trustee. From a judgment in favor of the garnishee on his plea of *nulla bona,* the plaintiff appeals. Reversed.

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, and PARKE, JJ.

*J. Craig McLanahan,* with whom were *France, McLanahan & Rouzer,* on the brief, for the appellant.

*J. Kemp Bartlett, Jr.,* with whom were *Bartlett, Poe & Claggett* on the brief, for the appellee.

PARKE, J., delivered the opinion of the Court.

The Pen Mar Company, Incorporated, appellant, obtained a judgment against Emanuel J. Schlissler on May 1st, 1925, for the sum of one thousand, eight hundred and fifty-one dollars and ninety-two cents with interest and costs; and on June 27th, 1925, the appellant caused an attachment to be issued on this judgment, that was laid in the hands of Louis S. Ashman, trustee, garnishee and appellee, on June 27th, 1925. The garnishee appeared, and on his plea of *nulla bona* issue was joined and the case was submitted to and tried before the court, without a jury, resulting in a verdict and judgment for the garnishee. It is from this judgment that this appeal is taken and, in order to understand the questions presented with respect to the conflicting rights of the attaching creditor and the purport-

ing prior assignees to the fund of the debtor in the hands of the trustee and garnishee, it will be necessary to state the controlling facts.

Emanuel J. Schlissler was the owner of a parcel of land which he desired to improve by building six houses, and for this purpose he obtained a loan from the Sun Mortgage Company on the security of a mortgage which was made a lien on the premises. As the improvements were to be built with the proceeds of the loan, the mortgage stipulated that the mortgagor should enter into a contemporaneous agreement and declaration of trust so as to assure the complete construction of the proposed houses by securing, if necessary, the application of the mortgage loan exclusively for that purpose. The parties selected Louis S. Ashman, Esq., as their trustee, and he and the owner entered into the contemplated agreement and declaration of trust.

The net proceeds of the mortgage loan to the owner was seventeen thousand, four hundred and eighty-nine dollars and ninety cents, and this amount was paid to the trustee for deposit in his name as trustee, and the owner agreed that the houses would be completed on or before the 27th day of October, 1924. The sum so deposited was, on the order of the owner and a certain James W. Miller, to be paid to the owner and Miller, or to Miller or to any other party as the owner should direct, in nine installments of specified amounts. The first seven of these installments were thus payable at different progressive stages of the construction of the six houses according to the specifications, and the eighth installment was due when every one of the houses and lot were completed and improved in every detail and ready for occupancy; and thirty days thereafter and when all mechanic's claims and liens had been met to the trustee's satisfaction, the final or ninth installment was so payable by the trustee. These last mentioned terms of the trust were set forth in section 3, which was supplemented by sections 4 and 5, providing for arbitration in the event of a disagreement between the owner and the trustee upon

the question of whether the owner had "earned" the payment of any one of the successive installments by having carried the course of the construction of the houses to that stage upon which the payment of the respective installment depended; and, also, for various rights conferred upon the trustee and obligations imposed upon the owner, in order that the trustee might be able to ascertain and determine what claims had been incurred or paid for work, labor, and materials employed or used in the improvement of the premises.

The owner carried on the improvements and the trustee paid the successive installments, in accordance with the agreement and the terms of the trust, until the seventh installment had been paid, but the owner failed to complete the improvements, and, therefore the trustee retained in his hands $3,208.02 of the whole amount ($3,306.00) of the eighth payment, and, also, the amount ($1,481.88) of the ninth or last installment, making the aggregate amount $4,689.90. The improvements were not completed by October 27th, 1924, as the owner had agreed, and his default continued, so that on March 28th, 1925, the trustee notified him that, under section 6 of the agreement and declaration of trust, it was the trustee's duty to exercise the power conferred to meet the contingency of the owner's subsisting default.

The power gave the trustee discretion to adopt either of two alternatives. The first was to pay over the residue of the trust fund to the mortgagee, which, after the application of this residue as a credit upon any moneys due or to become due by the owner under his mortgage indebtedness, should return any surplus to the owner. The trustee rejected this alternative and adopted the second, which empowered him as such trustee to enter upon the premises, to take possession, and "to employ any moneys remaining in hand to protect and preserve any improvements already made, or proceed with the improvements required by this agreement, in the name of, at the risk of, and for the benefit of the owners; and

if the funds in hand be insufficient to protect or complete the said improvements, then the trustee may mortgage the said premises to raise such additional moneys." These provisions were obviously for the benefit of both the mortgagee and the owner.

The trustee proceeded with the incomplete improvements and, at a cost of $1,292.93, finished the work in accordance with the specifications, so that, if this had been timely done by the owner, he would have been entitled to have been re-paid the amount due on the eighth installment of $3,208.02, and the ninth installment of $1,481.88. The mortgagee foreclosed its mortgage and realized enough under these proceedings to discharge in full the mortgage indebtedness; hence the trust fund remaining with the appellee was the property of the mortgagor and payable to him, unless the rights of others intervened.

The owner and Miller had executed and delivered a number of assignments to various parties, who had done work and supplied material in the building of the houses, and three of these assignments are involved on this appeal. The first, in order of time, was delivered on September 6th, 1924, to the Arundel Shope Brick Company for $854.70; the second, although dated on August 14th, was not delivered until December 5th, 1924, to the Lafayette Mill and Lumber Company for $3,900, and the third was delivered on December 13th, 1924, to Scribner & Neuman for $1,833. The first of these assigned the given sum to the assignee, and then authorized the trustee to pay the same "out of payment No. 9" as scheduled in section 3 of the agreement and declaration of trust. The second assignment provided that "as and when payments number 9, 7, and 8 are due and payable to me (the undersigned) under the terms of my trust agreement with you (meaning the trustee), I hereby authorize, assign and direct you to pay $1,500 of payment (7); $1,200 of payment (8); $1,200 of payment (9), figured on six houses on Spedden Street, to the Lafayette Mill and Lumber Company." The third assignment was like to the second, except

that "$1,500 of payment (7)" and "$330 of payment (8)" were to be paid to Scribner & Neuman. These three assignments were not formally accepted by the trustee, but he was promptly notified of their execution, and placed the claims on his file for payment when the several installments became due; and on February 15th, 1925, the Lafayette Mill and Lumber Company and Scribner & Neuman were each paid by the trustee the sum of fifteen hundred dollars, pursuant to the respective assignments of this portion of "installment (7)". The payment of the respective sums thus allocated by similar assignments to the several installments was customarily made by the trustee drawing his check to the order of owner and Miller for the amount due the particular creditor, and then the payee endorsed the check to the creditor, who then received the check.

The testimony further showed that, after crediting the payments mentioned and correcting some errors in the accounts, the true amounts remaining due and intended to be secured by the second and third assignments were respectively $2,220.75, instead of $2,400, and $223.50 instead of $333. The question for solution is whether, under these facts, the subsequent attachment laid in the hands of the trustee by the appellant shall have priority over the three assignments mentioned.

1. These facts tend to establish that, in consideration of work and labor or materials furnished or to be supplied in the improvement of the land of the owner, and in the manner prescribed by the articles between the owner and the trustee, the owner and Miller assigned to three assignees a definite part of certain installments to fall due according to the terms of the instrument mentioned, and that, after the execution and delivery of these assignments and before the issuance of the writ of attachment by the appellant, the trustee was promptly notified of the several assignments, but did not technically accept the assignments, although the trustee filed the assignments for the purpose of paying the same, according to their tenor, when and as the indicated install-

ments were available for that purpose. Although these were
partial assignments of a fund in the hands of a trustee by
its beneficial owner, they were effective at law, because they
were a completed transaction between competent parties and
intended to be an actual appropriation of the particular
funds, conferring a present right on the assignees, although
its immediate exercise was not possible under the circum-
stances; and because, finally, the trustee after notice could
not disregard the assignment and discharge his trust by a
payment to the original beneficiary, inasmuch as the assign-
ments were made pursuant to the express terms of the decla-
ration of trust, and in accordance with the established course
of its administration. *McDowell, Pyle & Co. v. Hopfield,*
148 Md. 84, 87; *Wilson v. Carson,* 12 Md. 54, 74, 75;
*Harris v. Ballimore,* 73 Md. 22, 39; *Rosenstock v. Ortwine,*
46 Md. 388, 394-396; *Groshon v. Thomas,* 20 Md. 234, 247.
Even if the garnishee had been a debtor instead of a trustee
bound by the duties of an active trust, and had not, in fact,
accepted the partial assignments, prior notice to the gar-
nishee would have made the assignments operate as equitable
assignments between the owner and the assignees and, so,
good as against subsequent attaching creditors of the assignor.
The reason for this is that the attaching creditor can subject
to his attachment only the interest of the attachment debtor
at the time of the attachment and arising before the trial. It
follows that a *bona fide* partial assignment or other transfer
by the debtor before the laying of the attachment has priority,
although the assignment or other transfer be equitable instead
of good at law. *Supra,* and 2 *Perry on Trusts,* sec. 926;
*International Bedding Co. v. Terminal Warehouse Co.,* 146
Md. 479, 491; *Ballo. & O. R. Co. v. Wheeler,* 18 Md. 378,
379; *Getz v. Johnston,* 143 Md. 542, 549; *Brady v. Slate,*
26 Md. 290, 311; *Troxall v. Applegarth,* 24 Md. 163, 182,
183; *Lambert v. Morgan,* 110 Md. 1, 24, 26; *Bruns v. Spald-
ing,* 90 Md. 349, 359, 360; *Owens v. Barroll,* 88 Md. 204,
208-210; *Brown v. Macgill,* 87 Md. 161, 172, 173.

2.  The fact that these assignments were in form valid

and effective as against all subsequent attaching creditors leaves for resolution a graver difficulty, which is raised by the appellant's major contention that these assignments never became operative. This point is founded on the fact that, because of his prior default, the owner himself did not fulfil the conditions upon which the eighth and ninth payments were to become payable to him, and thus made it necessary for the trustee to complete the improvement, at the owner's risk, and, therefore, the money remaining in the hands of the trustee after the work was done could not be held to be the installments assigned, as these never became due and payable to the owner in accordance with the terms of the contract. There is force in this argument, but the question of construction raised can not be answered until due weight is given to all the parts of the instrument, considered as a whole, so that the real intention of the parties may be thus collected and declared. The flaw in the appellant's reasoning is that the assignments are interpreted with reference to a particular portion of the agreement and declaration of trust, instead of to all its correlative provisions. The better view, in our judgment, is that an arbitrary and definite portion of a specific trust fund was intended to be assigned, and that this portion was thereby appropriated to the use of the assignee, and so long as it, or any part of it, remained in the possession of the trustee and, although diminished by the operation of conditions imposed upon it by the contract, could be traced and identified and was payable by the trustee to the owner, the portion assigned or any residue of it passed to the assignee under the terms of the assignment.

In the first place, it must be borne in mind that there was in the hands of the trustee but one trust fund, and that this single trust fund was the proceeds of a mortgage loan negotiated by the owner. Generally speaking, this fund was placed in trust in the manner agreed, for the purpose of protecting the mortgagee by securing the projected improvements upon the land covered by the mortgage deed, and while the legal title to the fund was in the trustee, the beneficial interest

was vested in the owner, subject to the performance of his contract to improve the encumbered land; and, under the declaration of trust, three separate provisions were made under which the whole or residue of the trust fund would become payable to the owner. The first method of repayment was that of paying to the owner and Miller, or to any one on their order, the whole of said trust fund in nine payments of arbitrarily fixed amounts. The second and third methods were provided in the event of the owner's default in the completion of the improvements as agreed. By the second method, the trust fund remaining in the trustee's hands was to be paid to the mortgagee and, after the discharge of the mortgage indebtedness, the surplus should be returned to the owner. And by the third method, the trustee was either to preserve and protect the improvements already made, or to proceed with and complete the improvements as the owner had agreed; and, while the declaration of trust does not so specifically provide, it is a necessary implication that any money remaining in the hands of the trustee, after the payment of his expenses so incurred and of the mortgage debt, would be payable under the terms of the trust to the owner. Consequently, no matter by which of these three methods money was paid to the owner, he received it under the terms of the trust agreement, when and as it was due and payable to him under such agreement. So that, if the whole of the single trust fund was divided under the first method into nine designated parts, and the owner assigned any one or more of these parts, it was subject to all the terms of the declaration of trust, and the amount actually to be received by the assignee would be dependent upon and limited by which one of the three methods of repayment to the owner would be operative at that time. Accordingly, the assignees of the eighth and ninth payments acquired all of the assignor's interest therein to the extent of the amount specified in the assignments, subject to the contingency of being paid under any one of the three methods in which the owner might be paid. Whatever the amount so payable to the owner under either the second or third method, the sum received would be

the aggregate of all the undistributed payments named in the first method, less the proper charges and expenses. This construction gratifies all the terms of the instrument executed by the owner and the trustee, and secures the evident intention of the parties to the assignment in a fair and reasonable manner. See *Leupold v. Weeks,* 96 Md. 280, 289-290.

The application of this construction made the sum of $4,-689.90, remaining in the hands of the trustee at the time of the owner's default, represent $3,208.02 of the eighth payment, and $1,481.88 of the ninth. The trustee's expenses incurred in the completion of the improvements, amounting to $1,292.93, being for the benefit of the whole residue, should be charged proportionately against the said amounts representative of the eighth and ninth payments, and the residue of $3,396.97, now in the hands of the trustee, would fall into its two component parts of $2,323.62, representing the residue of payment (8), and $1,073.35, representing the residue of payment (9). Deducting from the residue ($2,323.62) of payment (8) the sum of $1,200 first chargeable against it under the assignment of the Lafayette Mill & Lumber Company, and the sum of $223.50 next chargeable against it under the assignment to Scribner & Neuman, and the amount ($55) of the attachment of the A. S. Abell Company, laid before that of the appellant, there would remain in the hands of the trustee $845.12 as the residue of payment (8), which would be subject to the attachment of the appellant.

The remainder of payment (9), $1,073.35, after the payment of $854.70 chargeable against it under the assignment of the Arundel Shope Brick Company, is but $218.65, which is payable to the Lafayette Mill & Lumber Company as a credit on the $1,020.75 attempted to be secured by its assignment of payment (9).

The aforegoing calculations are made to illustrate the practical working of the principles heretofore set out in this opinion, but the actual application will have to be made by the trial court on the remand of these proceedings. The appellant's first, third, fourth and tenth prayers, and its motion to strike out the three assignments, which were ad-

mitted subject to exceptions, were properly refused by the trial court, as they were based on the incorrect theory that the three assignments were not a valid assignment of any funds in the hands of the trustee as against its attachment, although the incorporation of the exception to the refusal to strike out this testimony with the exception to the ruling on the prayers in a single bill of exceptions was improper. Under such circumstances, the appeal only brings up the action of the court on the prayers, 2 *Poe, Pl. & Pr.,* sec. 319A. The fourth, fifth and seventh prayers of the appellee were improperly granted as, under the complicated facts of the instant case, the first two were too general, indefinite and uncertain, and all ignored the controlling fact that the three assignments were not against a general fund but against the residue of two separate and distinct parts of that fund. If this last distinction had been presented by the prayers, a verdict in favor of the appellant would have been supported by the evidence. In conclusion, we find no error in the court's refusal to strike out the whole of an answer on the ground that it was irrelevant and not responsive to the question asked of the witness. This exception was not pressed, and it is sufficient to say that the testimony sought to be excluded was subsequently given in evidence by the same witness, and so there is no reversible error, even if it be granted the ruling was erroneous.

For the error in granting the three prayers of the appellee, the case will be reversed.

*Judgment reversed, with costs, and new trial awarded.*