**In re SEIM CONST. CO.**

No. 9442.

District Court, D. Maryland.

March 21, 1941.

Louis J. Sagner, of Baltimore, Md., for trustee.

Albert Sapero, of Baltimore, Md., for petitioner, Robert S. Green, Inc.

CHESNUT, District Judge.

In the course of administration of the bankrupt estate of The Seim Construction Company, Robert S. Green, Inc., a creditor, asserted the right to collect the sum of $653.47 as a secured claim. As a result of the first hearing the referee sustained the claim and ordered the trustee in bankruptcy to pay it. The latter petitioned for review with the result that the case was referred back to the referee to take further testimony. As a result of the second hearing the referee rejected the claim as a secured claim; and the claimant has now petitioned for review of that order of the referee. The claim is based on an assignment of *a part* of a fund and is dated August 11, 1939. The date of the bankruptcy was April 11, 1940. The referee finally rejected the claim on the ground that it constituted a voidable preference. As the date of the assignment was more than four months prior to the bankruptcy, the question arises as to whether under the present amended Bankruptcy Act (the Chandler Act of 1938) the assignment was properly subject to vacation as a voidable preference.

The Chandler Act made important changes in sections 60, subs. a and b of the Bankruptcy Act. See 11 U.S.C.A. § 96, subs. a and b. For the purpose of determin-

ing whether a voidable preference was made within four months before bankruptcy, subsection a now provides that— "for the purpose of subdivisions (a) and (b) of this section, a transfer shall be deemed to have been made at the time when it became *so far perfected* that no bona fide purchaser from the debtor and no creditor could thereafter have acquired any rights in the property so transferred superior to the rights of the transferee therein, and, if such transfer is not so perfected prior to the filing of the petition in bankruptcy, or of the original petition under chap. 10, 11, 12 or 13, of this title, it shall be deemed to have been made immediately before bankruptcy". (Italics supplied.) The question then is, when did the assignment of August 11, 1939, become sufficiently "perfected" within the meaning of the statute. The language is not difficult of application in matters affecting real estate or tangible chattels, because their status, with respect to the perfection of a transfer, is usually pretty well defined by statutes or judicial decisions of the particular state; but there is much more difficulty in applying the present provision of the statute with respect to the assignment of non-negotiable choses in action, such as accounts or equitable interests in a fund. It will be remembered that before the Chandler Act the statutory provisions were expressed in terms of the "recording" of transfers. See 8 C.J.S., Bankruptcy, § 217, et seq.

The facts of this case are stated at considerable length in the two reports of the referee, but for the purpose of the point now under discussion it will be sufficient to relate them briefly only. The bankrupt had been engaged in the business of building houses. In March 1939 it was thoroughly insolvent having practically only one asset, an equity of about $1,000 in a piece of improved real estate. It was apparently then indebted to the amount of about $8,000. Robert S. Green, Inc., the claimant in this case, was a creditor on an open account for a balance of $653.47. One Wheeler, the agent of the claimant, pressed persistently but unsuccessfully for the collection of this balance from Lohmuller, the president and principal executive of the bankrupt. Under date of July 18, 1939, Lohmuller, as president of The Seim Construction Company, the bankrupt, made a written contract to sell the piece of property in Baltimore County, Maryland, which apparently constituted the bankrupt's only asset, and in which it had the equity of about $1,000, to Walter J. Ruppert and Helen M. Ruppert, his wife, for $8,000, the consideration to be paid as follows: $1 upon the signing of the contract, and "1100 in cash and the balance to be financed by means of a mortgage or mortgages so that the monthly payments shall not exceed $60", upon final settlement. On August 11, 1939, Wheeler finally succeeded in obtaining from Lohmuller the assignment in question. It was in the following form:

"Baltimore, Maryland,
"August 11, 1939

"For value received and in consideration of the sum, of $1.00, the receipt of which is hereby acknowledged; we hereby assign all our right, title and interest in the amount of $653.47 to Robert S. Green, Inc., out of the proceeds from the settlement of the sale of the property on the East side of Paterson Avenue, North of Carroll Road, Lochearn, Baltimore County, Maryland, and we hereby authorize the said Robert S. Green, Inc., to take whatever steps necessary, legal or otherwise, to protect their interests in the above assignment.

"Witness our hands and seals this 11th day of August, 1931.

"Seim Construction Company,
"(Signed)   John W. Lohmuller
"President"

It will be noted that the assignment does not name the purchaser of the property and is not specifically an order on the purchaser in favor of the claimant. Wheeler handed this assignment to the attorney for a building association with which at the time Lohmuller was negotiating for the financing of the sale, and the attorney promised to see that the claim of Robert S. Green, Inc., was paid from the proceeds of the settlement when made; but the negotiations with the building association failed, and the assignment was then returned to Wheeler who put it in the hands of the claimant's attorney for collection or legal attention. When the assignment dated August 11, 1939 was given, there was then a receivership case pending against The Seim Construction Company in a state court in Baltimore City, but no receiver had been appointed. The particular case was subsequently dismissed, but again on September 28, 1939 a second receivership suit was filed against The Seim Construction Company, of which the attorney for the claimant was advised, but in which he took no action until on December 22, 1939 he filed an ex parte

petition setting up the assignment and asking for leave to intervene, which was granted. The Rupperts, the prospective purchasers of the property in which the bankrupt had an equity, were not notified of the assignment, and it appears that the other parties to the second receivership case did not learn of the assignment until about April 2, 1940, when the attorney for the claimant filed a petition in the case asking to have the proceeds of the sale impressed with a trust to the extent of the amount mentioned in the assignment; and promptly thereafter this involuntary proceeding in bankruptcy was instituted. In the meantime, however, satisfactory arrangements had been made by Lohmuller or by the purchasers to finance the sale and in order to perfect title a receiver was appointed by the Circuit Court No. 2 of Baltimore City about December 29, 1939. In the final settlement of the transaction the receiver collected about $900 as balance in cash due from the purchasers.

■ It will be noted that the assignment was for *a part only of a fund* expected to come into future existence under an existing contract. Counsel for the claimant here nevertheless contends that the assignment was legal in nature, but I think it entirely clear, under Maryland law, that the assignment at best is only equitable in its nature. See an excellent article by Mr. Charles G. Page of the Baltimore Bar entitled "Latent Equities in Maryland", Maryland Law Rev.Vol. 1, pp. 1, 5, 15, 22; Lambert v. Morgan, 110 Md. 1, 72 A. 407, 132 Am.St.Rep. 412, 17 Ann.Cas. 439; Pen Mar Co. v. Ashman, 152 Md. 273, 136 A. 640; McDowell, Pyle & Co. v. Hopfield, 148 Md. 84, 128 A. 742, 52 A.L.R. 105; Seymour v. Finance & Guaranty Co., 155 Md. 514, 531, 142 A. 710; Union Trust Co. v. Townshend, 4 Cir., 101 F.2d 903; Md.Code 1939, Art. 8, § 1. I assume that the assignment, although very informal in character, constituted an equity in favor of the claimant; but the question is when, in the absence of notice to the purchasers, as custodians of the partly assigned fund, the assignment became so far "perfected" that no bona fide purchaser from the bankrupt and no creditor could subsequently have acquired any superior rights in the assigned fund.

■ The question must be determined by the Maryland law. In re Talbot Canning Corp., D.C.Md., 35 F.Supp. 680. And as the status of the assignment is fixed by the local law, this is true without regard to Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487; Benedict v. Ratner, 268 U.S. 353, 45 S. Ct. 566, 69 L.Ed. 991; Union Trust Co. v. Townshend, 4 Cir., 101 F.2d 903, certiorari denied 307 U.S. 646, 59 S.Ct. 1044, 83 L.Ed. 1526. As the fund to arise from the sale was not presently due and available to the bankrupt when the assignment was made, but was only to arise in the future contingently or conditionally, it is not entirely clear under the Maryland decisions whether a *creditor* of the bankrupt by an attachment proceeding subsequent to the assignment, laid in the hands of the prospective purchasers as garnishees, could have acquired a superior right in the fund over the assignee, who had not previously given notice of the assignment to the purchasers. The referee thought such an attachment would probably prevail on the inference drawn by him from Pen Mar Co. v. Ashman, 152 Md. 273, 279, 136 A. 640. Cf. McDowell, Pyle & Co. v. Hopfield, 148 Md. 84, 128 A. 742, 52 A.L.R. 105. The assignment was not within the scope of the Uniform Fraudulent Conveyances Act, in force in Maryland, Md.Code, Art. 39B, §§ 3(a) and 9(b), as the preexisting debt constituted a fair consideration. Drury v. State Capital Bank, 163 Md. 84, 90, 161 A. 176. See also In re Helfenbein, D.C.Md., 32 F.Supp. 26, 28. But however it may be with respect to a subsequent attaching creditor, I think it fairly clear under the Maryland decisions that a bona fide purchaser of this prospective fund from the bankrupt, subsequent in date to August 11, 1939, could have secured a superior equity in the fund by giving notice to the purchasers prior to notice given by the claimant as first assignee. This, I think, is the effect of the Maryland case of Lambert v. Morgan, supra, which, in that respect, adopts the doctrine of the English case of Dearle v. Hall, 3 Russ. 1, decided in 1828. It is said that now the majority of our state courts have not followed Dearle v. Hall, and it was rejected by the Supreme Court in an *equity case* where the jurisdiction was based on diverse citizenship; Salem Trust Co. v. Manufacturers' Finance Co., 264 U.S. 182, 44 S.Ct. 266, 68 L.Ed. 628, 31 A.L.R. 867, which, of course, was prior to Erie R. Co. v. Tompkins, supra. It was also rejected in the A. L. I. Restatement of Contracts, § 173. Nevertheless I think the Maryland rule must prevail on the question here involved in this bankruptcy case. See Page

on Latent Equities in Maryland, supra, pp. 14, 19, 25(5); Glenn on Fraudulent Conveyances and Preferences, Vol. II, ss. 534, 527, 486, 487; 26 Va.Law Rev. 168, 178, 181.

It has been suggested that the proper construction of the statute means that the transfer becomes "perfected" when it could not be subsequently successfully attacked by *both* purchasers and creditors; or, in other words, that an assignment does not lack "perfection" merely because a purchaser could secure a superior right, unless also a creditor could likewise do so. And on this contention it could be argued that the assignment was perfected when made on August 11, 1939 because it is not clear that the Maryland law would have given any superior rights to an attaching creditor. The wording of the statute is "so far perfected that *no* bona-fide purchaser from the debtor *and* no creditor could thereafter have acquired any" superior rights. (Italics supplied.) The contention is based on the word "and" in this phrase. In my opinion the contention is not sound either grammatically or on the broader view of the evident intent of Congress. Reference may be made to the language used in the House Committee Report (Report No. 1409, 75th Congress, 1st session, July 29, 1937) reading: "The new test is more comprehensive and accords with the contemplated purpose of striking down secret liens. It is provided that the transfer shall be deemed to have been made when it has become so far perfected that neither a bona fide purchaser nor creditor could thereafter have acquired rights superior to those of the transferee. As thus drafted, it includes a failure to record and any other ground which could be asserted by a bona fide purchaser or a creditor of the transferor, as against the transferee." While I think the evident meaning of the statute itself is clear, the wording of the Committee Report also seems to me inconsistent with the contention advanced. See also "The Bankruptcy Law of 1938 (Chandler Act) as Analyzed by Jacob I. Weinstein", page 120, where the wording of the statute is construed as meaning "when the debtor has done everything required of him under applicable state law in order to make the transfer so complete that it would be good against the whole world." And see Glenn on Fraudulent Conveyances and Preferences, Vol. II, s. 486, note 78.

In applying the Maryland law to the instant facts, the proper conclusion is that the assignment of August 11, 1939 did not become sufficiently perfected until after it was filed in the receivership case on December 22, 1939, and the receiver was appointed and made settlement with the purchasers. I think this may be considered as constituting notice to the obligor of the fund; and certainly no superior rights could thereafter have been obtained by any one because the fund was then paid over to the receiver for account of all whom it might concern. Miller v. Horowitz, 172 Md. 419, 430, 191 A. 906; see 8 C.J.S., Bankruptcy, § 217, p. 736; and Brown Shoe Co. v. Carns, 8 Cir., 65 F.2d 294. The main purpose of the section of the bankruptcy law under consideration is to protect creditors from secret preferential liens. This object of the statute would be frustrated in this case if the assignment is to be considered perfected prior to December 22, 1939, or December 29, 1939, both of which dates were within four months of the bankruptcy.

In reaching this conclusion I am not unmindful of its possible bearing, indirectly at least, on the present practice of commercial banking involving assigned accounts, in Maryland. I understand that it is the general practice of finance companies, which buy mercantile accounts, or take them as security for advances, and permit substitution of new accounts for old ones collected, not to notify the debtors; and I have been informed that no change has generally been made in this practice since the effective date of the Chandler Act. See In re Helfenbein, D.C.Md., 32 F.Supp. 26. The instant case does not directly involve this practice of commercial banking, and the case has not been argued by counsel representing such interests as amici curiae. Therefore, of course, nothing herein is intended to express any opinion affecting that particular subject. The application of the Act to that subject has, however, been much discussed recently by text writers and commentators. See Glenn on Fraudulent Conveyances and Preferences, Vol. II, s. 534; and the article by Perry E. Hamilton in 26 Va.Law Rev. 168, entitled "The Effect of Section 60 of the Bankruptcy Act upon Assignments of Accounts Receivable". In a very recent decision in the Fifth Circuit, Adams v. City Bank & Trust Co., 115 F.2d 453, certiorari denied March 10, 1941, 61 S.Ct. 739, 85 L.Ed. ——,

it was held the statute applied only to transfers for a preexisting debt, and therefore not to a chattel mortgage given for a present consideration more than four months before bankruptcy, although not recorded until within four months.

■■ It is unnecessary to discuss at length the other question considered by the referee, whether the claimant had reasonable cause to believe that the debtor was insolvent when the transfer was made. After some little original·doubt upon the subject, I conclude, under the amended statute, that the claimant's knowledge or that of his agent (at least in this case where the assignment was made to secure a preexisting debt) must be related to the time when the assignment became perfected, and is not limited to the time it was first executed. In re Talbot Canning Corp., supra; and Glenn on Fraudulent Conveyances and Preferences, supra, § 487. In his review of the testimony, the referee concluded that the claimant had reasonable cause to believe in the debtor's insolvency both on August 11, 1939 when the assignment was made, and thereafter in December 1939 when it became perfected. I find the facts recited by the referee in this connection a sufficient basis for his conclusion. There are some bits of evidence appearing in the papers bearing on the point in addition to what the referee emphasized. Thus it is not without some significance that after Wheeler had obtained the assignment he apparently abandoned any further active efforts to make the collection and put the matter in the hands of an attorney. The latter was informed of the second receivership case on September 28, 1939, but took no action to give publicity to his client's claim of security until December 22, 1939, and then only obtained an ex parte order for intervention and did not give specific notice to other parties in interest in the receivership case until April 2, 1940. It also appears that when the bankrupt's schedules were filed they were prepared by the same attorney who acted for the claimant, and in the schedules some uncertainty at least as to the status of the claim is apparent, as it was filed both as a secured claim and as an unsecured claim, and in the summary of assets and liabilities it is not included in the amount of the secured claims.

The final conclusion is that the referee's order disallowing the claim as a secured claim should be and it is hereby affirmed.