**MICHIGAN FIRE AND MARINE IN-SURANCE COMPANY, a Michigan corporation**

v.

**GENIE CRAFT CORPORATION, a Delaware corporation; Mitchell Stevan, Trustee in Bankruptcy of Genie Craft Corporation, et al.**

Civ. No. 11789.

United States District Court
D. Maryland.
June 23, 1961.

Charles Markell, Jr., Baltimore, Md., for plaintiff.

Mitchell Stevan and Louis J. Sagner, Baltimore, Md., for Trustee in Bankruptcy.

Eugene Schonfield, Baltimore, Md., for Robert U. Cooper.

Patrick J. Ogden, Jr., Washington, D. C., for John L. Goldstein, Paul H. Otto and Clarence D. Stauffer.

Irving B. Grandberg, Baltimore, Md., for A. S. Abell Co. and Radio Electric Service Co.

James M. Earnest, James D. Newton, Washington, D. C., and M. Peter Moser, Baltimore, Md., for Union Trust Co. of District of Columbia.

THOMSEN, Chief Judge.

In this interpleader action under 28 U.S.C.A. § 1335, the claimants to the $73,261.32 proceeds of the fire insurance policy paid into court are: (a) the Trustee in Bankruptcy of Genie Craft Corp., the insured; (b) Union Trust Co. of the District of Columbia, first assignee of part of the proceeds; (c) other holders of partial assignments, namely (1) Dr. Cooper, (2) Goldstein, (3) Otto, and (4) Stauffer, (5) A. S. Abell Co., and (6) Radio Electric Service Co.; and (d) Lawrence Warehouse Co.

Two preliminary questions have been heretofore decided by this Court. See 183 F.Supp. 533. The Trustee has requested a reconsideration of Point II of that opinion. I have considered the arguments and cases cited by the Trustee and other parties, but see no reason to change my decision.

The evidence with respect to the claim of the Trust Co. has not been completed. This opinion deals with the claims of the other assignees. The claim of the Warehouse Co. involves a point similar to one involved in the Trust Co. claim, and they will be considered together later.

The Trustee now attacks the claims of the assignees, other than the Trust Co., on the ground that the claimed transfers are voidable preferences under sec. 60 of the Bankruptcy Act, 11 U.S.C.A. § 96. It is not disputed that the assignments under consideration at this time were made and delivered to the assignees after December 15, 1957, the date of insolvency of the debtor (heretofore determined by this Court), and within four months before February 4, 1958, the date of the filing of the petition in bankruptcy; nor is it disputed that the effect of the claimed transfers would be to enable each assignee to obtain a greater percentage of his debt than some other creditor of the same class. The disputed questions are (1) whether the

transfers were for or on account of an antecedent debt; and (2) whether the assignees or their respective agents had, at the time when the transfer was made, reasonable cause to believe that the debtor was insolvent.

The question whether the several transfers were "perfected" before bankruptcy, and if so, the time when they were so perfected, within the meaning of sec. 60, sub. a(2), is important in connection with the questions of antecedent debt and knowledge of insolvency.

## The Parties

Genie Craft Corp., now bankrupt, a Delaware corporation, had its principal place of business in Washington, D. C. On March 31, 1957, it absorbed Home Sewing Machine Co., of Baltimore, Md., a sole proprietorship, and assumed Home's liabilities. The business of Home in Baltimore was continued by Genie Craft as its Home Division.

Michigan Fire and Marine Insurance Co. (Insurance Co.), the plaintiff, is a member of the Springfield Fire & Marine Insurance group. The fire policy issued to Genie Craft was reinsured 100% with Empire Fire Ins. Co.

Dr. Robert U. Cooper, of Washington, D. C., a bank director, and the author of a book, "Investments for Professional People", was a director of Genie Craft from September 18, 1957, to January 21, 1958.

John L. Goldstein, a restaurateur of Washington, D. C., was a shareholder of Genie Craft and attended some of the meetings of its directors.

Paul H. Otto, a businessman of Chevy Chase, Md., was a director of Genie Craft during all material times.

Clarence D. Stauffer, a businessman of Washington, D. C., was a vice-president and director of Genie Craft during all relevant times.

The A. S. Abell Co. (Abell) and Radio Electric Service Co. (Radio), both of Baltimore, Md., were creditors of Home and later of Genie Craft.

## Facts

The testimony and exhibits alike are generally vague and confusing. The Court will make some findings of fact in connection with the several points discussed, but for convenience will set out here a chronology of events and basic facts found by the Court.

March 31, 1957—Genie Craft absorbed Home and assumed Home's liabilities. Among the liabilities so assumed were balances due by Home to Abell and Radio.

June 28, 1957—Cooper lent Genie Craft $15,000 on its thirty-day promissory note. Before that, Cooper had purchased debenture bonds of Genie Craft in the amount of $15,000. The note was renewed in July, 1957, for sixty days, and was never presented for payment.

July 13, 1957—Abell and Radio filed suits in the Baltimore City Court to collect their respective claims. Thereafter and until the middle of January, 1958, there were numerous conversations and letters which gave those corporations and their experienced bankruptcy attorney reasonable cause to believe that Genie Craft was insolvent before January 9, 1958.

August 1, 1957—Lawrence Warehouse Co. issued to the Trust Co. warehouse receipts covering personal property of Genie Craft in its field warehouse in Baltimore, as security for a new loan. See 183 F.Supp. at page 535.

October 5, 1957—Genie Craft offered $200,000 of its stock to raise additional capital.

In November, 1957—The Trust Co. refused to increase the total of its loans to Genie Craft on assigned accounts.

November 21, 1957—Meeting of Genie Craft directors. Failure of stock offering was announced; only $12,000 had been sold. Officers were authorized to negotiate sale of controlling interest to Dalton, so that "some equity" would be left to stockholders. Reference was made to continual bank overdrafts.

November 22, 1957—I. R. taxes in the amount of $707.58 assessed; notice of demand sent to Genie Craft.

December 2, 1957—Meeting of Genie Craft directors. They were told that Dalton's auditor did not agree with Genie Craft's financial statements and that a sale to Dalton was unlikely. Directors authorized a lien on accounts receivable held by Trust Co., subordinate to its lien, to individuals who would lend $25,000 to meet current expenses.

December 5, 1957—Trust Co. lent $25,000, secured by endorsement of five persons, including Otto and Stauffer. The $25,000 was received by Genie Craft and credited to notes payable.

December 15, 1957—Date of insolvency, as found by this Court at an earlier hearing.

December 26, 1957—Fire destroyed all property of Home Division in Baltimore, including property in Lawrence's field warehouse.

January 3, 1958—Assignment given to Trust Company. The assignment is set out below.[1] The language of the other assignments is similar in wording, except that they were not accepted by Empire.

January 6, 1958—Notice of assignment sent by Trust Co. to Springfield group.

January 9, 1958—Meeting of Genie Craft directors. Minutes state that several of those present advanced $1,000 for current payroll. President stated that Trust Co. was considering calling all notes because of overdrafts.

[1] "Assignment

"Whereas, the sum of Twenty-Two Thousand, Five Hundred ($22,500.00) Dollars having been advanced to Genie Craft Corporation by the Munsey Trust Company with the understanding that the Munsey Trust Company was to have been endorsed as a loss payee on the fire loss policy hereinafter named of Genie Craft Corporation and that inadvertently the said endorsement was never made, therefore, in consideration thereof and

"For Value Received, the undersigned Genie Craft Corporation, a corporation organized and existing under the laws of the State of Delaware, with its principal office at 1022 18th Street, N.W., Washington, D.C., being the assured and beneficiary of a policy of insurance issued February 1, 1957 by The Michigan Fire and Marine Insurance Company, Detroit, Michigan, of the Springfield Fire and Marine Group of Springfield, Massachusetts, to-wit, policy #15954, and in the amount of $110,000.00, covering certain merchandise and contents of the assured located in premises No. 11 North Howard Street, Baltimore, Maryland, which contents were recently destroyed by fire, hereby irrevocably assigns, sets over, transfers and conveys unto The Munsey Trust Company of Washington, D.C., to whom it is indebted, all of its right, title and interest as beneficiary of the aforesaid insurance policy in and to the first $22,500.00 payable thereunder, after payment to Goodman, Gable, Gould Co., Insurance Adjusters, 410 Garrett Building, Baltimore, Maryland, of their fee for services in adjusting our claim, such fee not to exceed 10% of the amount recovered under the aforesaid policy.

"Witness our hands and seals this 3rd day of January, 1958.

(Seal)
Attest:

/s/ Dale C. Dillon
_____
Secretary

Genie Craft Corporation
By /s/ Joseph A. Weber
_____
President

"The foregoing assignment is hereby accepted this *14th* day of *January,* 1958.

Empire State Insurance Co., As Reinsurers of

The Michigan Fire and Marine Insurance Company, Detroit, Michigan. of the Springfield Fire and Marine Group of Springfield, Massachusetts

Attest:
(signature illegible)
_____
Secretary

By /s/ Geo. C. Peacock
_____
(Title of Officer)
Vice President"

January 10, 1958—Date of assignments of $1,000 each given to Cooper, Otto, Goldstein, Stauffer and two others for cash advanced to meet expenses. Cooper and Otto advanced $1,000 each that day, Goldstein and Stauffer a few days later.

January 14, 1958—Empire accepted assignment to Trust Co. See Note 1.

January 15, 1958—Trust Co. demanded payment of Genie Craft loan and stated that if loan was not paid it would sell the accounts receivable on January 21, 1958.

January 20, 1958—Assignments given to Abell and Radio.

January 20, 1958—Assignments to Abell and Radio sent to plaintiff Michigan and forwarded by it to Empire, which acknowledged but did not accept them.

January 21, 1958—Meeting of directors. They were told that the Trust Co. was going to sell the accounts receivable on January 23; that the only remaining asset was the fire claim; that there was no cash; and that the Company would be insolvent and without any working capital whatsoever when the accounts receivable were sold. On the same day Cooper resigned as director, stating that at the time of his election as a director he was unaware of Genie Craft's true financial condition.

January 24, 1958—The accounts receivable were sold by the Trust Co. for much less than the balance due the Trust Co.

January 24–28, 1958—Notices of the assignments to Goldstein, Otto and Stauffer sent to plaintiff Michigan and forwarded by it to Empire, which acknowledged but did not accept them.

January 31, 1958—Assignment given to Cooper to secure the $15,000 note, which he renewed for sixty days.

February 4, 1958—Involuntary petition in bankruptcy filed.

February 5, 1958—Cooper mailed his two assignments to plaintiff Michigan, which forwarded them to Empire, which acknowledged but did not accept them.

### Discussion

### Were the Assignments Voidable Preferences?

Of the six elements necessary to establish a preference under sec. 60, sub. a, 11 U.S.C.A. § 96, sub. a, only one is now [2] disputed by any of the claimants, namely, whether the assignments were given for antecedent debts. Each of the claimants also raises the question whether at the time the transfer was made the claimant (or his or its agent) had reasonable cause to believe that the debtor was insolvent. Sec. 60, sub. b, 11 U.S.C.A. § 96, sub. b.

#### I. Antecedent Debt

The Trustee contends that each of the assignments was either (a) in fact given for an antecedent debt, or (b) must be "deemed" to have been made at a time when it would necessarily follow that the transfer was for an antecedent debt. See sec. 60, sub. a (2) and (7), 11 U.S.C.A. § 96, sub. a (2) and (7); 3 Collier on Bankruptcy, 14th ed., sec. 60.39, pp. 917–18.

(a) The transfers to Radio and Abell were in fact for prior obligations, and I do not understand that these claimants rely upon the Trustee's failure to establish this element of preference.

The $15,000 assignment to Dr. Cooper was made to secure the renewal of the $15,000 note, representing money which he had lent to Genie Craft more than six months before. The renewal of this note did not constitute such new consideration as would prevent the assignment from being "for or on account of an antecedent debt"; no judgment obtained by Dr. Cooper on the note could have given him any lien which would not itself have been a voidable preference if he had reasonable cause to believe

2. The Court has heretofore determined that the date of insolvency was December 15, 1957.

that Genie Craft was insolvent at the time the judgment was entered. See 3 Collier, sec. 60.11, p. 791 et seq.

The several $1,000 items represented new money advanced to meet payrolls, so that collections could be continued.

The Trustee argues however, that the assignments were given as an afterthought and not as consideration for the advances. The evidence on this point is insufficient to support his contention. The Trustee can prevail as to these assignments only if they were not "perfected" within the meaning of sec. 60, sub. a (2) during the period allowed by sec. 60, sub. a (7).

(b) Sec. 60, sub. a (2), 11 U.S.C.A. § 96, sub. a (2), provides that for the purposes of determining whether a transfer amounts to a voidable preference, "a transfer of property other than real property shall be deemed to have been made or suffered at the time when it became so far perfected that no subsequent lien upon such property obtainable by legal or equitable proceedings on a simple contract could become superior to the rights of the transferee" and "If any transfer of real property is not so perfected against a bona fide purchase, or if any transfer of other property is not so perfected against such liens by legal or equitable proceedings prior to the filing of a petition initiating a proceeding under this Act (title), it shall be deemed to have been made immediately before the filing of the petition."

The Trustee argues that a *partial* assignment of a chose in action is not perfected within the meaning of sec. 60, sub. a (2) unless and until it is accepted by the debtor; that none of the assignments [3] was ever accepted by the Insurance Co.; that the transfers must therefore be deemed to have been made immediately before the filing of the peti-

tion in bankruptcy; and that if they are deemed to have been made at that time, they were given for or on account of an antecedent debt.

We must first consider what is the applicable state law. 3 Collier, sec. 60.39, p. 913. The policy was issued in Maryland and covered property in Maryland. The assignments were executed in the District of Columbia; some of them were delivered in the District and some in Maryland. The copies of the assignments were sent to the insurer in Massachusetts, some from the District and some from Maryland. Applying the rules stated in Restatement, Conflict of Laws, secs. 348–354, I conclude that the Maryland law should control the validity of the assignments.[4] See also Restatement of Law, Second, Conflict of Laws—TD No. 6, April 14, 1961, secs. 348–354 and comments.

In an early Maryland case, Wilson Co. v. Carson Co., 12 Md. 54, the court said: "But where the order is drawn either on a general or particular fund, for a part only, it does not amount to an assignment of that part, or give a lien as against the drawee, unless he consents to the appropriation by an acceptance of the draft, or an obligation to accept may be fairly implied from the custom of trade, or the course of business * * *." 12 Md. at pages 74–75.

That statement has been modified by later cases, to make notice rather than consent the controlling factor in many instances. It is still the law, however, that the partial assignment of a claim under a fire insurance policy before the amount of the loss has been determined is not binding on the insurer without its consent, since the insurer cannot be required to deal with a number of different assignees in adjusting the loss.[5] Nevertheless, it would be

---

**3.** Except the assignment to the Trust Co.

**4.** The only Maryland case on the point cited or found is Whitridge v. Barry, 42 Md. 140, which, so far as it goes, supports this decision.

**5.** The insurer's right to raise the point that it had not consented to the assignment may be waived by the insurer, and was waived in this case by plaintiff when it deposited the amount of the loss in

an equitable assignment, valid as between the assignor and the assignee, so that if the assignor collected the full amount of the claim, it would hold the amount assigned for the benefit of the assignee. Restatement, Contracts, sec. 156.

The important question here is whether a creditor of the bankrupt by an attachment proceeding subsequent to the assignment, laid in the hands of the Insurance Co. as garnishee, could have acquired a superior right in the fund over the assignee.

In Pen Mar Co., Inc. v. Ashman, 152 Md. 273, 136 A. 640, 642, the question was whether a subsequent attachment creditor should have priority over three partial assignees. The court held that the assignments were "effective at law" because they had been accepted by the trustee (the obligor) and because he had received notice of the assignments. The court went on to say: "Even if the garnishee had been a debtor instead of a trustee bound by the duties of an active trust, and had not, in fact, accepted the partial assignments, prior notice to the garnishee would have made the assignments operate as equitable assignments between the owner and the assignees and, so, good as against subsequent attaching creditors of the assignor. The reason for this is that the attaching creditor can subject to his attachment only the interest of the attachment debtor at the time of the attachment and arising before the trial. It follows that a *bona fide* partial assignment or other transfer by the debtor before the laying of the attachment has priority,

although the assignment or other transfer be equitable instead of good at law." 152 Md. at page 279, 136 A. at page 642.[6]

In re Seim Construction Co., D.Md., 37 F.Supp. 855, 858, Judge Chesnut held that an assignment "for a *part only of a fund* expected to come into future existence under an existing contract * * at best is only equitable in nature." The referee in bankruptcy had held that a creditor of the bankrupt by an attachment proceeding subsequent to the assignment, laid in the hands of the prospective purchasers as garnishees, could have acquired a superior right in the fund over the assignee, who had not previously given notice of the assignment to the purchasers. Judge Chesnut found it unnecessary to pass on this point, saying: "But however it may be with respect to a subsequent attaching creditor, I think it fairly clear under the Maryland decisions that a bona fide purchaser of this prospective fund from the bankrupt, subsequent in date to August 11, 1939, could have secured a superior equity in the fund by giving notice to the purchasers prior to notice given by the claimant as first assignee." 37 F.Supp. at page 858.

██ Since Seim sec. 60, sub. a of the Bankruptcy Act has been amended to eliminate the reference to bona fide purchasers. Art. 8, sec. 1 of the Maryland Code has also been amended. I conclude, however, that Art. 8, sec. 1 was not intended to apply to partial assignments of insurance policies before adjustment of the loss, especially where

court in this interpleader proceeding. 4 Am.Jur. 281 (Assignments, sec. 65). That waiver, however, occurred long after the petition in bankruptcy was filed and cannot affect the rights of the trustee under sec. 60, sub. a (2) (7) and, sub. b and sec. 70, sub. c of the Bankruptcy Act, 11 U.S.C.A. § 96, sub. a. (2) (7) and sub. b and § 110, sub. c.

6. In McDowell, Pyle & Co. v. Hopfield, 148 Md. 84, 128 A. 742, 52 A.L.R. 105, a case involving a complete assignment and

not a partial assignment, the court held that the assignment of a chose in action is complete as against a creditor of the assignor garnishing the chose after assignment, even though notice of the assignment is not given to the debtor until after the attachment is laid, and even if it is not given until after a judgment of condemnation in the garnishment proceeding provided the judgment has not been paid nor execution issued thereon and the equities are with the assignee.

the policy contains a provision prohibiting assignments without the consent of the company.[7] Questions of its applicability to other partial assignments can be decided as they arise.

In the recent case of Maryland Coop. Milk Producers v. Bell, 1955, 206 Md. 168, 110 A.2d 661, which dealt with complete and not partial assignments, the Court said: "This statute [now Art. 8, sec. 1] clearly recognizes the right to assign amounts to become due on an existing contract, and also obviates the necessity of notice in order to validate the assignment. Probably it was not designed to change the preexisting law, but to dispense with notice as a requirement of the Federal law, as construed in 'perfecting' claims against a subsequent trustee in bankruptcy of the assignor. See 2 Williston, Contracts (Rev.Ed.), § 435A, 1954 Suppl., p. 61. In McDowell, Pyle & Co. v. Hopfield, 148 Md. 84, 128 A. 742, 52 A.L.R. 105, and Seymour v. Finance & Guaranty Co., [155 Md. 514, 142 A. 710] supra, it was held that notice was not necessary to validate an assignment, even before the statute. See also 2 Williston, Contracts (Rev.Ed.), § 433. But notice may still be a factor in determining priorities as between the various parties or claimants, for the assignment is equitable in its nature and is open to equitable defenses. See Lambert v. Morgan, 110 Md. 1, 72 A. 407; Pen Mar Co. v. Ashman, 152 Md. 273, 136 A. 640; In re Seim Const. Co., D.C.Md., 37 F.Supp. 855; Union Trust Co. of Maryland v. Townshend, 4 Cir., 101 F.2d 903; 2 Williston, Contracts, (Rev.Ed.), § 432 and § 447; Restatement, Contracts, § 167; 1 Md.L.Rev. 1. We do not understand that the Act of 1943 was designed to alter the general rule or to repeal Code (1951), Art. 8, sec. 4, supra." 206 Md. at pages 176, 177, 110 A.2d at page 665.

In an even more recent, unreported case[8] Judge Prendergast, of the Supreme Bench of Baltimore City, said: "In the view taken by the court, Section 1 of Article 8 of the Maryland Code does not change the long established rule in this State that a partial assignment is not binding on the debtor. The entire first part of the statute in question simply validates a written assignment as between an assignor and an assignee, while the concluding portion affords relief to the debtor who has paid or discharged his debt in whole or in part. Accordingly, the rule seems to be unaffected."

I conclude that the *consent* of the Insurance Co. was not necessary in this case to "perfect" the four $1,000 assignments against the claims of an attaching creditor.

Under the Maryland cases cited above, particularly the dictum in the Pen Mar case, and sec. 60, sub. a (7) of the Bankruptcy Act, 11 U.S.C.A. § 96, sub. a (7), *notice* to the debtor (Insurance Co.) within twenty-one days of the respective assignments was sufficient to perfect the claims of the assignees within the meaning of sec. 60, sub. a (2) and (7). Such notice was given on behalf of Goldstein, Otto and Stauffer.

Dr. Cooper did not give notice of his $1,000 assignment until February 5, the day after the bankruptcy. This notice was more than twenty-one days after

---

7. The policy contains the following provision: "Assignment of this policy shall not be valid except with written consent of this Company." It is the general rule that such a provision does not prevent the assignment of the proceeds of a policy after loss. 5 Appelman, Insurance Law and Practice, sec. 3458 et seq.; 29 Am.Jur. (Insurance, sec. 655), p. 932. But, as I have held above, the assignment of part of a claim against an insurance company before adjustment of the loss is not binding on the Company unless consented to by it.

8. Prestressed Concrete Products Co., Inc. v. Kaiser Aluminum & Chemical Corporation and Howard Engineering Co., Inc., Superior Court of Baltimore City, 1959/928/56177.

the assignment. Under sec. 60, sub. a (7) (II) the transfer must be deemed to have been made immediately prior to the filing of the petition in bankruptcy. Therefore, the assignment must be considered as having been given for or on account of an antecedent debt.[9] 3 Collier, sec. 60.39, pp. 917–920.

*II. Knowledge of Insolvency*

 The next question is whether the assignees or their respective agents had at the time when the transfer was made reasonable cause to believe that the debtor was insolvent. Sec. 60, sub. b, 11 U.S.C.A. § 96, sub. b.

As a result of his conversations and correspondence with representatives of Genie Craft after July 13, 1957, when he filed suit against it on behalf of Abell and Radio, Irving Grandberg, the experienced collection and bankruptcy attorney for Abell and Radio, had reasonable cause to believe that Genie Craft was insolvent before the assignments to Abell and Radio were given in the middle of January, 1958.

Otto and Stauffer were directors of Genie Craft during all material times. Cooper was a director from September 18, 1957, to January 21, 1958. Goldstein was not a director, but attended some of the meetings at which the desperate financial plight of the corporation was discussed, including the meeting of January 9, 1958. All of them had reasonable cause to believe that Genie Craft was insolvent at the time each of them advanced $1,000 to meet the payrolls in the middle of January, 1958, after the fire, after it was known that the Trust Co. intended to sell the pledged accounts, and after the meeting of January 9, 1958.

A fortiori, Cooper had reasonable cause to believe that the debtor was insolvent on January 31, 1958, when he received the $15,000 assignment. The pledged accounts had been sold, and Cooper had resigned as a director, complaining that he had not been told of the financial condition of the company at the time he had been elected a director.

The date of "perfection" of the transfers, discussed in I(b) above, is also relevant to the question when the transferee must have had reasonable cause to believe that the debtor was insolvent, 3 Collier, sec. 60.39, p. 920; but it is not material in this case, because in fact all of the claimants had such knowledge at the time the assignments were given.

### Conclusion

The claims of Goldstein, Otto and Stauffer should be allowed. The other claims must be denied.

Counsel for the Trustee should prepare an appropriate order and have it approved by counsel for the other parties.

---

9. The notice of the $15,000 assignment to Dr. Cooper was also given on February 5. That was within 21 days of that assignment, and that transfer is deemed to have been made on the date of the assignment, despite the intervening bankruptcy. 3 Collier, sec. 60.51, p. 983. This, however, does not help Dr. Cooper, since the assignment was in fact given for or on account of an antecedent debt.