Edward Meyers **CALDWELL**, Appellant,

v.

J. Reuel **ARMSTRONG**, Trustee in Bankruptcy, United States of America, and Dixie Faye Caldwell Shea, Appellees.

No. 7768.

United States Court of Appeals
Tenth Circuit.

March 17, 1965.

Byron Hirst, Cheyenne, Wyo. (James L. Applegate and Richard V. Thomas, Cheyenne, Wyo., were with him on the brief), for appellant.

Joseph Kovner, Atty., Dept. of Justice (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson and Fred E. Youngman, Attys., Dept. of Justice, and Robert Chaffin, U. S. Atty., and LeRoy V. Amen, Asst. U. S. Atty., were with him on the brief), for appellee United States.

Richard F. Pickett, Cheyenne, Wyo., and Harold M. Johnson, Rawlins, Wyo. (Loomis, Lazear, Wilson & Pickett, Cheyenne, Wyo., were with them on the brief), for appellees J. Reuel Armstrong, trustee in bankruptcy, and Dixie Faye Caldwell Shea.

Before MURRAH, Chief Judge, BREITENSTEIN, Circuit Judge, and DAUGHERTY, District Judge.

BREITENSTEIN, Circuit Judge.

Divorce and bankruptcy combine here to present vexatious legal problems. Appellant Caldwell, the bankrupt, appeals from the affirmation of a referee's order excluding from the bankruptcy estate the proceeds of a matured policy insuring his life. Appellees Dixie Faye Caldwell Shea and the United States assert liens against those proceeds—Dixie because of a Wyoming divorce decree and the United States because of levies for unpaid federal income tax.

Caldwell owned a matured, single-premium endowment policy on his life. The policy was issued by New England Mutual Life Insurance Company, the insurer, which has never been a party to any of these proceedings. The policy provided that Caldwell could withdraw the entire amount, "if living, after having attained the age of thirty-five (35) years." Caldwell became 35 on April 2, 1963. The value of the policy was about $6,300.

The marriage between Caldwell and Dixie was terminated by a divorce decree entered by a Wyoming state court on January 8, 1963. So far as pertinent the decree awarded Dixie $4,056.33 and her attorney $407, all payable out of the policy proceeds. Caldwell was ordered to execute a partial assignment of the policy proceeds to Dixie and to exercise his right to withdraw such proceeds on April 2, 1963. The policy was delivered to the clerk of the court. The decree provided that upon the failure of Caldwell to do what was needed to pay the

award out of the policy proceeds "then this Decree shall have the full force and effect in law and equity of the partial assignments or any other paper or instrument which may be required by said Insurance Company to properly authorize and cause the payment of said sums to be made * * *." Also, the decree enjoined Caldwell from taking any action which would render the decree ineffective.

On February 15, 1963, the United States filed a notice of levy on the insurer in the amount of $2,591.49 on account of federal income taxes assessed against Caldwell and unpaid. Additional levies were made later.

Caldwell filed a voluntary petition in bankruptcy in Wyoming federal court on May 31, 1963, and appellee Armstrong was named trustee. The petition listed the insurance policy as an asset. Dixie filed a proof of claim in the amount of the divorce award and asserted that payment was secured by the policy. On recommendation of the trustee the referee held that the policy was not part of the estate. The bankrupt filed a petition for review and the district court upheld Dixie's lien but ordered the balance paid into the bankruptcy estate. The United States then filed a motion for new trial because of the disregard of its levies. Meanwhile Dixie and the United States had made a written agreement that out of the policy proceeds Dixie should receive $4,093.32 and the United States

$2,221.14. On reconsideration the district court upheld Dixie's lien and the United States' levies and approved the division of the policy proceeds between them in accordance with the agreement. The bankrupt then brought this appeal.

■ Dixie and the trustee have moved to dismiss the appeal on the ground that the bankrupt is not an aggrieved person within the meaning of the Bankruptcy Act, and hence not entitled either to petition for review of the referee's order or to appeal from the court's order of affirmance.[1] In ordinary circumstances a bankrupt is not an aggrieved party with rights of review,[2] because the adjudication absolves him of liability and he has no interest in the distribution of his estate,[3] and because his property has passed to the trustee by operation of the Bankruptcy Act.[4] The bankrupt says that the case at bar is an exception to the general rule.

■■ The issue is whether the proceeds of the policy shall be included within the bankruptcy estate. If included, the assets will be sufficient to pay the tax claims. If not included, bankrupt will be left with a tax liability of about $1,400 which is not dischargeable in bankruptcy.[5] Rather than being absolved of all liability the bankrupt, if the order is affirmed, will be left with a substantial financial burden which will detrimentally affect his rights. This is enough to make him an aggrieved person within the meaning of the statute.[6]

1. Section 39, sub. c of the Bankruptcy Act, 11 U.S.C. § 67, sub. c provides that a person "aggrieved" by a referee's order may petition for review. Section 25, 11 U.S.C. § 48, provides for an appeal to a court of appeals after written notice to the "aggrieved" party.

2. See Manda v. Sinclair, 5 Cir., 278 F.2d 629, 630, certiorari denied 364 U.S. 908, 81 S.Ct. 271, 5 L.Ed.2d 224.

3. See Hartman Corp. of America v. United States, 8 Cir., 304 F.2d 429, 430.

4. See In re Pramer, 7 Cir., 131 F.2d 733, 735.

5. The provision that liability for alimony is not dischargeable in bankruptcy, 11 U.S.C. § 35, sub. a(2), has no application because we are convinced that the divorce decree made a property settlement and did not order alimony. A property settlement may be discharged in bankruptcy. In re Alcorn, N.D.Cal., 162 F.Supp. 206, 209.

6. See Klein v. Rancho Montana De Oro, Inc., 9 Cir., 263 F.2d 764, 771; Menick v. Hoffman, 9 Cir., 205 F.2d 365, 367. In re Tyne, 7 Cir., 261 F.2d 249, 251–252, certiorari denied sub nom. Tyne v. Venetucci, 359 U.S. 974, 79 S.Ct. 892, 3 L.Ed.2d 841, recognizes that a bankrupt may have an appealable interest if the equity in the property to be recaptured would create a surplus above his debts.

He cannot rely on the trustee to protect his rights because the trustee has recommended that the policy proceeds be not included in the bankruptcy estate and has aligned himself with Dixie and the United States. The motion to dismiss is not well taken.

 We are concerned with the validity of the liens claimed by the United States and Dixie. If valid, they cover all the policy proceeds. Little need be said about the tax liens of the United States. The bankrupt does not contest his liability for the taxes. Indeed he cannot consistently do so because he must rely on the undischarged tax liability to sustain his claim of aggrievement. The bankrupt does contend that the levy is faulty.[7] We held in Kirby v. United States, 10 Cir., 329 F.2d 735, that contingent property rights of a taxpayer are subject to federal tax lien and levy. In any event the bankrupt is in no position to complain about the levies. They did not add to the amount of the federal tax claim and served only to free the tax claim from the priorities accorded by § 64, sub. a(1), (2), and (3) of the Bankruptcy Act.[8] Claims having such priorities are represented by the trustee —not by the bankrupt. The trustee has agreed to the effectiveness of the federal tax levies.

The main thrust of the bankrupt's argument is directed against the trial court's holding that the divorce decree gave Dixie an equitable lien on the policy proceeds which excluded the amount of such lien from the bankruptcy estate. The attack is made on so many fronts that simple disposition is impossible.

On January 8, 1963, the date of the divorce decree, the bankrupt owned the policy with right to enjoyment, except as to current income, postponed until the occurrence of his 35th birthday on April 2, 1963. A Wyoming statute [9] authorizes a divorce court of that state to "make such order * * * as shall seem just and equitable" on property, rights or interests, or money "due or to become due" to the husband and to enforce such order "by attachment, commitment, injunction or by other means, according to the usages of courts." [10] Another Wyoming statute [11] provides that a divorce court may decree a specific sum to be paid by the husband to the wife, "and use all necessary legal and equitable processes to carry its decrees into effect." Rule 70 of the Wyoming Rules of Civil Procedure, which is similar to Rule 70, F.R.Civ.P., authorizes coerced conveyances of property.

 Because the parties to the divorce were residents of Wyoming, the only problem is whether the power of the court may be exercised in regard to property which is in Massachusetts where the insurer has its office. The answer is that for purpose of ownership and transfer the situs of personal property is that of the domicile of the owner.[12] Accordingly, a Wyoming court with its broad statutory powers could order an assignment of the fund, and create a lien in favor of the assignee, to effectuate an award to the divorced wife.

Caldwell, the bankrupt, next contends that if the state court had power to reach the insurance fund, it did not effectively

---

7. The bankrupt says that the tax levies were made within four months of bankruptcy. The statutory provisions on liens and fraudulent transfers do not apply to federal tax liens. See § 67, sub. b of the Bankruptcy Act, 11 U.S.C. § 107, sub. b.

8. 11 U.S.C. § 104, sub. a(1), (2), and (3). These relate to administrative expenses, claims for wages earned within three months of bankruptcy, and the expenses of certain creditors' actions.

9. Wyo.Stat.Ann. (1957) § 20–59.

10. In Wyoming expectancies or contingent interests are alienable property. See Wyo.Stat.Ann. (1957) § 1–974.

11. Wyo.Stat.Ann. (1957) § 20–63.

12. Vogel v. New York Life Ins. Co., 5 Cir., 55 F.2d 205, 208, certiorari denied 287 U.S. 604, 53 S.Ct. 9, 77 L.Ed. 525. See also Roberts v. Bathurst, 5 Cir., 112 F.2d 543, 545, certiorari denied 311 U.S. 709, 61 S.Ct. 317, 85 L.Ed. 460. Compare State of Texas v. State of New Jersey, 85 S.Ct. 626, decided February 1, 1965.

exercise that power. Its decree ordered Caldwell to exercise his right to withdraw the policy proceeds available to him on April 2, 1963, and to execute a partial assignment to Dixie within five days of that date. If he did not do so, the decree was to operate as such assignment. Caldwell was restrained from actions which would render the decree ineffective. Dixie says that the decree created an equitable assignment or equitable lien as of January 8, 1963. Caldwell says that the decree amounts to nothing more than an order requiring him to pay a debt out of a particular fund.

As we read the state court decree, the court intended not to rely on the personal liability of Caldwell but did intend to attach some definite obligation to the insurance fund. The only way in which Caldwell could have defeated the operation of the decree would have been by dying before his 35th birthday. If he lived, the fund was subject to the charge imposed by the court; and if he did not make the assignment, the decree was self-executing.

▇▇▇▇ An equitable lien is a creature of equity, is based on the equitable doctrine of unjust enrichment, and is the right to have a fund or specific property applied to the payment of a particular debt.[13] Such a lien may be declared by a court of equity out of general considerations of right and justice as applied to the relationship of the parties.[14] In the instant case the divorce court found a specific amount due Dixie and ordered payment thereof from a specific fund. This is not a case like First Nat'l Bank v. Ennis, 44 Wyo. 497, 14 P.2d 201, where the court considered an agreement to pay out of a particular fund. Here the court, in order to do justice between the parties, ordered everything necessary to satisfac-

tion of the wife's debt to be done and provided that if it was not done, the decree should be self-executing. The injunctive provisions of the decree accomplished the same divestment of control by the husband as might have been accomplished by delivery of possession of a tangible to the wife. We conclude that the Wyoming court exercised its broad statutory powers so as to charge the fund with the debt due the wife and that by its action the fund was subject to an equitable lien in favor of the wife.[15]

The bankrupt next argues that if the divorce decree did charge the insurance fund with an equitable lien in favor of Dixie it did not become effective until April 2, 1963, the date on which he became eligible to exercise his withdrawal right. Because that date is within four months of bankruptcy, he says that the lien is a voidable preference.

The Tenth Circuit has held that a lien becomes effective when the right to a fund materializes or when the fund comes into existence. In Underwood v. Phillips Petroleum Co., 10 Cir., 155 F.2d 372, the court construing Oklahoma law said that a contract under which a party is to receive compensation out of a particular fund if and when realized gives such party an equitable lien on the fund, when created, in the hands of one having notice of the contract. A similar rule was announced in Mitchell v. Bowman, 10 Cir., 123 F.2d 445, a case arising in Colorado. In Porter v. Searle, 10 Cir., 228 F.2d 748, a debtor agreed "immediately to execute" a chattel mortgage and failed to do so. The court applying Utah law held that an equitable lien attached at the time when the debtor refused to give the mortgage, and that because he had agreed to execute the mortgage immediately, the lien became effective immediately. We

---

13. United States v. Adamant Co., 9 Cir., 197 F.2d 1, 10, certiorari denied sub nom. Bullen v. Scoville, 344 U.S. 903, 73 S. Ct. 283, 97 L.Ed. 698.

14. Cleveland Clinic Foundation v. Humphrys, 6 Cir., 97 F.2d 849, 856, 121 A.L.

R. 163, certiorari denied 305 U.S. 628, 59 S.Ct. 93, 83 L.Ed. 403.

15. The United States does not contest the lien claim of Dixie and nothing in the record suggests that such lien claim is questioned by the insurer.

491

know of no reason why the same principles should not govern in Wyoming.

■ In the case at bar the fund was in existence and was owned by Caldwell subject to postponed right of enjoyment. The equitable right to the fund materialized when the divorce court entered its decree and could have been defeated only by the death of Caldwell. We are convinced that in the circumstances presented the lien was effective on the entry of the divorce decree.[16]

■ The final argument of the bankrupt is that Dixie did not perfect her lien so as to withstand the powers of the trustee to avoid preferences. Section 60, sub. a(6) of the Bankruptcy Act[17] declares a policy against the recognition of equitable liens in bankruptcy except where such liens could not have been perfected by some available means or except where the debtor's interest is only equitable. Here we have a situation in which Dixie could do no more than she did to perfect the lien. She obtained the decree and notified the insurer. Our attention is called to no procedure under Wyoming law which either required or permitted her to do more. No garnishment of the insurer would have been possible until after April 2, 1963. In our opinion notice to the insurer was sufficient to protect her against subsequent assignees and against the trustee.[18] We find nothing in such conclusion which violates the policy declared by § 60, sub. a(6).[19] Additionally the requirements of § 60, sub. a(2) are satisfied because Dixie's lien was so perfected that no subsequent lien obtainable by legal or equitable proceedings on a simple contract could become superior to her rights.

The motion to dismiss is denied and the judgment is affirmed.

16. No point is made of notice to the insurer. The record shows that it was notified of the divorce decree on January 16, 1963.

17. 11 U.S.C. § 96, sub. a(6).

18. See Michigan Fire & Marine Ins. Co. v. Genie Craft Corp., D.C.Md., 195 F. Supp. 222, 229.

19. See Porter v. Searle, 10 Cir., 228 F.2d 748, 755.