For these reasons, the acquisition constitutes a violation of Section 7 of the Clayton Act.

In the Matters of Harry William KAMINSKY and Edward Edwin Kaminsky, Bankrupts.

Nos. 66–B–1666, 66–B–1667.

United States District Court
E. D. Wisconsin.

May 3, 1968.

See also D.C., 281 F.Supp. 676.

Harold J. Sanville, Milwaukee, Wis., for bankrupts.

Truman Q. McNulty, Milwaukee Wis., for trustee.

## OPINION AND ORDER.

GRUBB, Senior District Judge.

On petition for review of an order of the Referee in Bankruptcy authorizing the sale of certain shares of stock.

Petitioners are the bankrupts, Harry William Kaminsky (Case No. 66–B–1666) and Edward Edwin Kaminsky (Case No. 66–B–1667). The proceedings were consolidated for the purpose of determining the disposition of stock of the Great Lakes Management Corporation of which Harry Kaminsky owned 60,950 shares and Edward Kaminsky owned 60,650 shares. The total shares of the bankrupts have been appraised at a value of $66,880, or approximately 50 cents a share. The stock presently has been deposited in escrow with the United States Internal Revenue Service under a Collateral Agreement, as a pledge to ensure payment of the tax obligations of the bankrupts and of corporations of which they were the principal owners. Counsel for the bankrupts advised the court that the amount of the lien of the United States against Harry Kaminsky is approximately $157,000 and that against Edward Kaminsky is $129,000.

After hearing, the referee made a finding that sale by public auction would not be feasible or in the best interests of the bankrupt estates and would likely depress the market and entered an order authorizing the sale through a designated broker on the following terms: sale was to be at the highest possible price obtainable, but in no event at a gross price lower than 50 cents per share; no restriction was placed on the broker as to the number of shares that could be sold or as to the person or persons to whom sale could be made; any stock remaining unsold after a period of 45 days was to be returned to the trustee for further disposition by the court; the broker was to receive the customary commission for over-the-counter sale; all sales of the stock by the broker made in accordance with the provisions of the order were to be final without further confirmation by the court; and sale of the stock was to be free and clear of any and all liens of the government, with any such liens to be transferred to the proceeds of sale.

During the course of the hearing, counsel for petitioners indicated that he had a buyer able and ready to submit a bid to purchase all the shares of the Great Lakes Management Corporation at a price in excess of the appraised value. The request for an adjournment for the purpose of receiving the sealed bid of this prospective or any other bidder was denied by the referee.

Petitioners contend that sale by public auction is the rule in bankruptcy and that a private sale of all or part of the stock may only be made on a showing of good cause which was not met in this case since the referee's finding that sale by public auction would depress the market for the stock has no support in the evidence. Further, they object to the

order authorizing over-the-counter sale by the broker for the reason that this would involve payment of a commission estimated at approximately $3,600. The payment of such a commission would be avoided by direct private sale by the trustee to the prospective bidder, thus leaving greater proceeds to be applied on petitioners' outstanding tax liabilities. And further, the authorized sale by the broker would permit one of the present stockholders of Great Lakes Management Corporation to acquire a controlling interest in said corporation by purchase of a small number of shares at a high value with the possibility of leaving the remainder of the shares unsold or subject to sale at a lower than the appraised value.

The trustee has raised the question of the bankrupts' standing to challenge the Order of the Referee as "aggrieved" persons under § 39(c) of the Bankruptcy Act, § 67(c), Title 11 U.S.C.A. It is not disputed that there may be residual tax liability after application of the proceeds on sale of the stock against the liability for which said stock serves as collateral and that such residual liability may not be dischargeable in bankruptcy. Although the amount of the residual liability is not determinable at this time, it appears that the bankrupts have a sufficient interest in the proceeds of sale to give them standing to seek review of the referee's order. See Caldwell v. Armstrong, 342 F.2d 485, 488 (10th Cir.1965). Accordingly, the court assumes for purposes of this decision that petitioners have the status of "aggrieved" persons.

In the disposition of the assets of the bankrupt estates, the court is the seller and the manner of sale is within the sound discretion of the referee. Under the General Orders following § 30 of the Act, § 53, Title 11 U.S.C.A., the rule calls for sale by public auction. However, the referee, for good cause shown may authorize a private sale of all or part of such stock. In re Winthrop Mills, 106 F.Supp. 464 (D.Me.1952).

The finding of good cause, that is, that public auction would depress the market for the stock, rests on the opinion to that effect expressed by counsel for the trustee, in view of the fact that although the value of the stock remained fairly static, there were nevertheless some fluctuations in price. Counsel for petitioners offered no contrary opinion even though there was opportunity to get the opinion of the broker who was questioned extensively on other aspects of sale of the stock. However, as the court understands the petitioners' position, they do not ask for sale by public auction, which also would involve the payment of auctioneer's fees and costs. Rather, they propose a private, direct sale by the trustee on sealed bids.

Notwithstanding some of the advantages of sale to the prospective bidder who purportedly was willing to take all of the shares at a price meeting or exceeding the appraised value without payment of a commission, the record in this case nevertheless supports the decision of the referee as an exercise of sound discretion concerning the disposition of the stock.

Over-the-counter sale has some attributes of a public auction in the sense that the agent for sale is a disinterested party except to the extent that he is acting solely in the interest of the seller ,in this case the bankruptcy court, to obtain the best price possible for the shares. The broker selected by the referee, whose qualifications are unquestioned, was familiar with the stock, had been the prime market for the stock for other brokers and the prime source of information for prospective buyers and sellers. The trader of the brokerage firm had been familiar with the stock for the past four to five years and was aware of any existing bidder interest in recent months. It was indicated that the bro-

**448**

ker would attempt to circulate the stock to reach the existing demand wherever it might be and expose the shares to other dealers as broadly as possible in order to sell at the best price. Thus, there is a possibility that over-the-counter sale in this manner may realize higher proceeds than would private sale by the trustee on sealed bids.

The bankrupts' concern, expressed in the hearing before the referee, that one present stockholder may gain control of the corporation is not a proper concern for the bankruptcy court since it does not necessarily follow that there will be remaining shares unsold or subject to sale at a lesser value. If there is maneuvering within the Great Lakes Management Corporation for control of the company, this furnishes a strong reason for disposition of the stock by a disinterested agent in place of the trustee acting on behalf of the bankruptcy court. In this respect the comment of the referee is noted with approval:

> "This Court does not want to get involved in sales where people are trying to get control of the company. Our only interest is in getting the highest price, and if people are interested, they can make the offer to the Frederick Company. They're in a better position to handle it now than the Court would be."

While the finding that public auction would depress the market may be open to question, the record amply shows that sale by an experienced broker, as outlined here, provides the possibility of obtaining a better price than would public auction and thus furnishes a basis for a finding of good cause. Under the circumstances of this case, petitioners have failed to show an abuse of discretion.

Now, therefore, it is ordered that the Order of the Referee must be, and it is hereby affirmed.