**In re Gloria Lee HART, aka Gloria Molisee, Debtor.**

**Richard W. HART, Jr., Plaintiff,**

**v.**

**Gloria Lee HART, formerly known as Gloria Molisee, Defendant.**

**Bankruptcy No. BK–LV 83–00396. Adv. No. 83–0534.**

United States Bankruptcy Court, D. Nevada.

July 16, 1985.

Steven Michael Burris, Sacco & Burris, Las Vegas, Nev., for plaintiff.

William L. McGimsey, Las Vegas, Nev., for defendant.

## MEMORANDUM DECISION

ROBERT CLIVE JONES, Bankruptcy Judge.

### I.

### FACTS

The Plaintiff, RICHARD HART, and the Debtor/Defendant, GLORIA LEE HART, were married prior to December 1980. On December 30, 1980, the plaintiff and defendant were divorced and a decree of divorce was entered in the Eighth Judicial District Court for the State of Nevada. The decree of divorce incorporated a property settlement agreement made by the plaintiff and the defendant on December 26, 1980. The property settlement agreement provided that the defendant would receive the family home. The plaintiff also agreed to pay one-half of the monthly house payment so long as the defendant remained single, and to quitclaim his interest in the family home to the defendant. In return, the defendant agreed to pay the plaintiff fifteen thousand ($15,000) dollars, representing the plaintiff's share of the equity in the home, upon the occurrence of either of two events: (1) the defendant's remarriage, or (2) the sale of the home. The purpose of this arrangement was to provide a home for the defendant to care for the parties' minor children so long as the defendant remained single, the children were minors, and the defendant owned and possessed the property.

On June 30, 1981, the defendant remarried. The defendant's marriage was annulled on July 8, 1981. The plaintiff learned of the defendant's remarriage and annulment in late August or early September of 1981. The plaintiff thereafter demanded $15,000 from the defendant, claiming that the money was due and owing under the terms of the divorce decree and property settlement. The defendant refused to pay the plaintiff the money demanded because she believed that the annulled marriage had not legally triggered her obligation to pay.

In 1982, the plaintiff filed a Motion to Enforce and Modify Decree of Divorce in the Eighth Judicial District Court for the State of Nevada. The defendant filed a Counterclaim to Reduce Arrearages [in child support payments] to Judgment. The plaintiff's motion and the defendant's counterclaim were heard by the state district court on November 16, 1982.

The district court entered its Findings of Fact, Conclusions of Law, and Order on January 21, 1983. The court found that the defendant had purposely failed to inform the plaintiff of her remarriage because she was concerned that the plaintiff would make an immediate demand for $15,000, as provided by the property settlement agreement incorporated into the divorce decree. The court also found that the plaintiff was $600 in arrears in his child support obligation. The court then ordered the defendant to pay the plaintiff $15,000 within sixty days. The court also ordered the plaintiff to pay the defendant child support payments then due and owing in the amount of $600 ($150 per child for two children for two months) within 60 days of the judgment.

On March 16, 1983, the plaintiff recorded his judgment and thereby obtained a lien against the defendant's residence located in Clark County, Nevada. On March 18, 1983, the defendant filed her petition for relief under Chapter 7 of the Bankruptcy Code.

The plaintiff subsequently commenced this adversary proceeding objecting to the debtor's discharge under 11 U.S.C. § 727(a)(2)(A) (Bankruptcy Code) for concealing property within one year before filing the petition, and further objecting to the discharge of child support debt under Code § 523(a)(5). The plaintiff, alternatively, seeks a declaratory judgment that the debt owed by the defendant is secured by a non-avoidable lien. The plaintiff also claims a right under state law to offset future child support payments against the debtor's $15,000 obligation.

The debtor/defendant's answer generally denies the substantive allegations of the plaintiff's complaint. The defendant asserts Nevada's "One-Action Rule" as an affirmative defense to the lien. The defendant further counterclaims for $1,200 in past due child support and requests a declaratory judgment that plaintiff's lien may be avoided under Code § 522(f)(1) (judgment liens impairing exemptions) as to the defendant's previously recorded homestead. A trial on the merits of plaintiff's complaint and defendant's counterclaim was held by this Court followed by the parties' briefs.

## II.

### ANALYSIS

The plaintiff contends that he is a secured creditor holding a nondischargeable lien against the defendant's homestead. The plaintiff contends that the lien was created by the divorce decree which ordered the defendant to pay the plaintiff his share of the equity in the family home, upon the occurrence of either of the two events previously mentioned.

The defendant argues that the evidence does not support a finding of an equitable mortgage lien and that the plaintiff holds a simple judicial lien which is avoidable under Code § 522(f)(1) and Nevada's "One-Action Rule". The defendant argues that once the lien is avoided, the debt secured by the lien becomes unsecured and, thus, is dischargeable.

An "equitable lien" is the "right, not recognized at law, to have a fund or specific property, or its proceeds, applied to

the payment of a debt." 6 *Debtor-Creditor Law* ¶ 26.02(C)(2) (Mathew Bender 1982); *See also Morrison Flying Service v. Deming Nat'l Bank*, 404 F.2d 856 (10th Cir.), *cert. denied*, 393 U.S. 1020, 89 S.Ct. 628, 21 L.Ed.2d 565 (1968). Equitable liens may arise either by express contract showing intent to secure an obligation by a charge to particular property, or by implication from the conduct and dealings of the parties. 6 *Debtor-Creditor Law* ¶ 26.02(C)(2). An equitable lien may also be created by a judicial decree. Substance must prevail over form. Therefore, "if a transaction resolves itself into a security, whatever its form or the name given to it by the parties, it is in equity a lien". *Id.*

In *Caldwell v. Armstrong*, 342 F.2d 485 (10th Cir.1965), a Wyoming divorce decree ordered a man to collect and pay the cash value of an insurance policy to his ex-wife. The court of appeals held that the intent of the divorce decree was to create an equitable lien in the cash value of the policy in favor of the ex-wife. *Id.* at 490. The court, interpreting the Wyoming state court divorce decree, stated that "the [state] court intended not to rely on the personal liability of Caldwell but did intend to attach some definite obligation to the insurance fund." *Id.*

■ In the present case, the divorce decree ordered the defendant to pay the plaintiff $15,000 within sixty days after the defendant remarried or upon the sale of the home. The intent of the parties was to attach some definite obligation to the family home, or in other words, to secure the plaintiff's claim to his share of the equity in the former family home. This Court, acting as a court of equity, concludes that the plaintiff has an equitable lien securing his equity in the defendant's property, and against any proceeds that might come from the sale of that property.

The defendant argues that any equitable lien the plaintiff may have acquired in the defendant's property has been lost pursuant to Nevada's One-Action Rule, and is, therefore, unenforceable. The One-Action Rule provides that "there shall be but one action for the recovery of any debt or for the enforcement of any lien upon real estate which action shall be in accordance [with Nevada law]." Nev.Rev.Stat. § 40.-430(1).

■ This rule is inapplicable in the present case. The property settlement agreement and divorce decree provided the basis for the equitable lien. The plaintiff's Motion to Enforce and Modify Decree of Divorce was filed in the same state district court action and resulted in findings and a judgment, the recording of which established the lien in the public record. The present action seeks only a declaration that the lien is unavoidable. Both the debt and the lien were already established in a single divorce action in state court and collection and enforcement proceedings therein.

■ In addition, it is clear that the public policy underlying the One-Action Rule would not be served by applying the rule in this case. The One-Action Rule was enacted to prevent double recovery by creditors, not to completely deny recovery of a legal debt. The purpose of the rule is to relieve debtors of harrassment by creditors seeking to recover both possession of the property securing the debt, and a full money judgment on the debt. *See Utah Mortgage and Loan Co. v. Black*, 618 P.2d 43 (Utah 1980).

The defendant further counterclaims for avoidance of plaintiff's lien under Code § 522(f)(1), which permits a debtor to "avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled ... if such lien is (1) a judicial lien ...."

■ Before any judicial lien may be avoided under § 522(f)(1), the debtor must prove three elements:

(1) that the lien is fixed on an interest of the debtor in property;

(2) that the lien impairs an exemption to which the debtor would otherwise be entitled; and

(3) that the lien is a judicial lien.

*See In re Thomas*, 32 B.R. 11, 12 (Bkrtcy. D.Ore.1983); *Wicks v. Wicks*, 26 B.R. 769,

770 (Bkrtcy.D.Minn.1982), *aff'd*, 31 B.R. 591 (D.Minn.1983); *Cowan v. Cowan*, 12 B.R. 613, 614 (Bkrtcy.W.D.Okl.1981).

■ With respect to the first element, the Congressional intent of § 522(f)(1) was to allow debtors to avoid judicial liens obtained by creditors on a debtor's exempt property. The legislative history of the section states:

> The debtor may avoid any judicial lien on exempt property ... [This] right allows the debtor to undo the actions of creditors that bring legal action against the debtor shortly before bankruptcy. Bankruptcy exists to provide relief for an overburdened debtor. If the creditor beats the debtor into court, the debtor is nevertheless, entitled to exemptions ...

H.R.Rep. No. 595, 95th Cong., 1st Sess. 126 (1977), U.S.Code Cong. & Admin.News, 5787, 6087 (1978). Thus, Congress intended to permit the avoidance of creditors' liens obtained in the rush before bankruptcy when the liens attached *after* the debtor had already acquired his or her interest in the property and not in the same transaction or judicial proceeding which transferred the interest to the debtor. *See In re Thomas*, 32 B.R. at 12; *Cowan v. Cowan (In re Scott)*, 12 B.R. at 615. In *In re Thomas*, 32 B.R. at 12, the court stated:

> In a dissolution proceeding, the document which conveys one spouse's interest in the homestead to the other spouse *simultaneously* creates a lien in favor of the spouse who will no longer be allowed to live in the residence. In effect, the property is conveyed subject to a lien to secure payment of the nonresident spouse's share of the property settlement. (Emphasis added).

■ In this case, the divorce decree ordered the plaintiff to convey his interest in the family home to the defendant. The plaintiff complied with the order and quitclaimed his interest to the defendant. The divorce decree also created an equitable lien in favor of the plaintiff to secure payment of his interest in the equity in the home. The lien was created concurrent with the transfer of plaintiff's interest to the defendant pursuant to the divorce decree and order. The lien here is more in the nature of a purchase money obligation and is not avoidable under § 522(f)(1).

The third requirement under § 522(f)(1) is that the lien be a judicial lien. The legislative history for Code § 101(31), which defines the term "lien", provides that, "In general, the concept of lien is divided into three kinds of liens: judicial liens, security interests, and statutory liens. Those three categories are mutually exclusive and are exhaustive except for certain common law liens." H.R.Rep. No. 595, 95th Cong., 1st Sess. 312 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 25 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5811, 6269.

■ A "judicial lien" is defined in Code § 101(30) as a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding," while a "security interest" is defined in § 101(43) as a "lien created by agreement." As stated by the district court in *Wicks v. Wicks*, 31 B.R. at 594, "For a judicial lien is an interest which encumbers a specific piece of property granted to a judgment creditor who was previously free to attach any property of the debtor's to satisfy his interest but who did not have an interest in a specific piece of property before the occurrence of some judicial action."

In *Wicks*, the ex-spouse of the debtor had obtained a lien for his equity in the homestead in exchange for transferring title to the residence to the debtor. While the lien was embodied in a divorce decree and judgment, both the bankruptcy court and district court looked behind the judgment to determine the source of the lien; i.e., a voluntary agreement.

■ In the present proceeding, the apparent intent of the parties was to create a lien in specific property of the debtor, a lien on the residence representing the plaintiff's equity therein. Accordingly, the lien arises either by virtue of an express agreement or, at least, the imposition of an equitable lien to carry out the parties' intent. As

such, it qualifies as a security interest rather than a judicial lien.

■ Further, the fact that the lien was perfected and embodied in a judgment shortly before the petition will not subject the lien to the debtor's avoiding powers contained in 11 U.S.C. § 522(g) and (h) since the source of the lien was the voluntary agreement of the debtor. *See* 11 U.S.C. § 522(g)(1)(A). In *Wicks v. Wicks*, 26 B.R. at 771 the court stated:

> The Plaintiff and the Defendant made an agreement which resulted in an alteration in their relationship and property rights. The Defendant now seeks to have the advantage of the agreement but to avoid its onerous results. A compelling and explicit statutory requirement to the contrary would be required to negative the parties agreement and permit such an unfair result.

Having failed to establish the first and third legs of her § 522(f)(1) argument, the debtor's counterclaim for lien avoidance must fall.

■ Having found the plaintiff's lien to be unavoidable, the Court need only briefly address the plaintiff's objections to discharge and dischargeability of the debt. The obligation for $15,000 appears to be a simple division of property interests and not, as plaintiff suggests, the deferral of the obligation as a form of support for the parties' minor children. The division of property interests in the property settlement agreement and divorce decree are not connected to or dependent upon either parent's child support responsibilities. Accordingly, Code § 523(a)(5) is not applicable.

■ Further, the debtor's fraudulent concealment of her remarriage and the maturation of the $15,000 debt does not constitute concealment of property in this case under 11 U.S.C. § 727(a)(2)(A). Even if that were the case, the plaintiff was aware of the concealment and the concealment occurred more than one year prior to the petition in this case.

■ Finally, the plaintiff demands a right to offset the Debtor's $15,000 obligation against his future child support payments. Generally, a creditor may offset a mutual prepetition debt owed to the debtor against a claim the creditor has against the debtor. 11 U.S.C. § 553; *see also Donato v. Dominion Nat'l Bank of Tidewater,* 17 B.R. 708, 709 (Bkrtcy.E.D.Vir.1982). The right to set off may be asserted in bankruptcy even though one of the debts involved is absolutely owing but not presently due when the petition is filed. 4 *Collier on Bankruptcy* ¶ 553.10[2]. However, Code § 553 is not an independent source of law granting rights and grounds for setoff. This section simply allows the common law right of setoff under non-bankruptcy law to be exercised in the bankruptcy case. *Donato v. Dominion Nat'l Bank of Tidewater,* 17 B.R. at 709; *In Re Haffner,* 12 B.R. 371, 373 (Bkrtcy.M.D.Tenn.1982).

■ In the present case, the plaintiff is obligated by a Nevada State District Court divorce decree to support his minor children. The decree ordered the plaintiff to pay the defendant $300 per month ($150 per child for two children) for child support "until the children reach the age of majority or are otherwise emancipated." This obligation to pay child support, however, is subject to the district court's continuing jurisdiction to modify the rights and liabilities of the parties to the divorce decree. The district court may re-examine the needs and support requirements of the minor children. The district court may increase or decrease the amount of the monthly child support payment. The court may also order that no further child support payments need be made. One or both of the children may require special medical treatment or special education. One or more of the children may die altogether eliminating the need for child support. Clearly, because of a miriad of unforseeable contingencies outside the control of the plaintiff, the defendant, and the state court, this debt is not "absolutely owing".

■ In addition, the State of Nevada has a strong interest in requiring parents to support their minor children. To allow the plaintiff to use setoff under these circumstances in order to avoid the payment of monthly child support would clearly interfere with Nevada's strong policy of re-

quiring parental support for minor children. Accordingly, the plaintiff may not use setoff to avoid his state-imposed responsibilities to support his minor children.

### III.

### CONCLUSION

The Court concludes that the plaintiff has a valid lien against the defendant's real property which may not be avoided by 11 U.S.C. § 522(f)(1) or Nevada's One-Action Rule. The Court denies plaintiff's objections to discharge and dischargeability of the debt and denies plaintiff's claimed right to offset debtor/defendant's $15,000 debt against future child support payments.

The Court will lift the automatic stay in this case to allow the parties to return to state court for enforcement of their respective rights to child support payments and enforcement of plaintiff's lien. This Memorandum Decision shall constitute Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 7052. Judgment will enter in accordance herewith.